Spalding, J.
This is a case of collision between the steam *394 boats Clipper and Mail, on the Ohio rivei;. The plaintiff below •was the owner of the Mail, and instituted proceedings to recover damages for the injury sustained by his boat, under the act of Feb. 26, 1840, entitled' “ an act providing for the collection of claims against steamboats and other watercraft, and authorizing proceedings against the same by name.”
By the third section of said act, it became necessary for the plaintiff to file, with his praecipe, “ a bill of the particulars of his demand, verified by his own affidavit, or that of his agent or attorney, or other credible person.”
Under this requisition of the statute, the plaintiff filed his affidavit, setting forth that, “ on the 20th of March, 1844, he was the owner of the steamboat Mail; that, while the said boat was safely and prudently being navigated on the Ohio river, near Tiltonsville, the said steamboat Clipper carelessly, wrongfully and illegally ran into the said steamboat Mail, and thereby greatly damaged her, the said Mail, to the amount of two thousand dollars,” etc.
The writ and declaration both set the damages at six thousand dollars.
On the trial, it became important to ascertain whether the collision arose from the fault of the Clipper alone, or from the mismanagement of the Mail, or from the fault of both boats combined.
To this end the witness Haldeman was called, who testified that he had been an engineer and captain of a steamboat for ■sixteen or eighteen years, and had built several boats as proprietor ; that he was not present at the time the boat owned by the plaintiff, received the injury for which suit was brought, but that he saw the boat after she had been injured by a collision with the defendant, and his attention was called to the break or fracture produced by that collision. He was then asked, by the counsel for the plaintiff, the question to which exception is taken by counsel for plaintiff in error, in their first assignment:
“ From the breach or fracture in the injured boat, how, or in *395 what direction the blow she received, appeared to have been given ?”
The witness answered that “ the blow appeared to have been given nearly head on — rather quartering.”
It is objected that this witness could only be asked “ to de-> scribe the breach or fracture,” and that the jury should have been left to form their own opinion whether the blow appeared to have been given nearly “ head on ” or not.
1 think the distinction attempted to be taken, is over nice.
It may easily be perceived how an experienced boatman could judge of the direction of the body in motion, that displaced a portion of the plank and timbers of the injured vessel, as a surgeon can tell from what quarter a blow has been aimed, that inflicts a wound upon the person ;■ but a mere description of the broken fragments, in the one case, or the lacerated integuments,-in the other, will seldom, if ever, enable a jury to say how the disturbing cause made its approach.
The truth is, you gain very little from the observation of the witness, in cases of this sort, if his opinion is to be entirely excluded from the jury. If he be confined, in his narration, to what he saw — the position of the broken timbers — the jury must necessarily be left in the dark as to the subject-matter sought to be elucidated.
The objection to the testimony of the witness Christy, is equally untenable. He stated that he had been and was the engineer of a steamboat; that he had seen the boat, injured by the collision for which the suit was brought, called the Mail, both before and after the collision; that she had been torn up after the injury; that, in her crippled condition, he considered her worth $8,000.
He was then asked to state the condition of the boat, and “ whether or not she was worth repairing, after the injury.” The witness stated the condition of the boat, and said “ she was not worth repairing.”
I see no impropriety in this course of examination. t
*396 With the fullest description of the nature and extent of the injury, the triers of the case, farmers and mechanics, perhaps ignorant of such matters, would be liable to err in their estimate of damages, from a supposition that the wreck was susceptible of being repaired, and put to use for purposes of commerce.
The opinion of one conversant with steam navigation, and who had examined the shattered vessel, was necessary to instruct the minds of the jury and enable them to arrive at a correct conclusion upon that subject.
It is said these witnesses were not'" called to the stand a8 “ experts.” They seem to have been called for their familiar acquaintance with steamboats in general, and with the nature ■of the injury done to the “ Mail;” and that was the kind of information which they strove to impart to the jury — information derived from facts which they had seen and known, and from conclusions which their own experience enabled them to draw from such facts.
I see no objection to calling these men “ experts ” if the name will render *.their testimony more unexceptionable; but it is not true as a legal proposition, that no one but “ an expert ” can give an opinion to a jury.
Prom the very necessity of the case, testimony must occasionally be a compound of fact and opinion.
I do not know how I can better illustrate my meaning than by the use of the language of the court in McKee v. Nelson, (4 Cowan 356,) which was an action for the breach of a marriage promise. The witness, on the trial, had given his opinion that the plaintiff was sincerely attached to the defendant, and this was assigned for error. The court say, “ It is true as a general rule, that witnesses are not allowed to give their opinions to a jury, but there are exceptions, and we think this is •one of them. There are a thousand nameless things indicating the existence and degree of the tender passion which language ■cannot specify. The opinion of witnesses on this subject must *397 be derived from a series of instances passing under their observation, which yet they never could detail to the jury.”
We do not-regard the question put by plaintiff to the witness White, referred to in the assignment, as objectionable. It appears that he was introduced as a witness to show that Staats, the man who had the helm of the Clipper at the time of the collision, was not a skillful pilot. On cross-exapaination he was asked by defendant’s counsel, “ if he ever knew of any accident to happen while Staats was at the wheel.” To this witness answered in the negative. The plaintiff’s counsel,, then, to rebut the effect of this last question and answer, put the question which is objected to in said third assignment.
“ You say in your answer to the cross-examination, you never heard of any difficulty which he (Staats) had. Did he ever steer alone his watch ? If so, how was the water, and did he or not, get into danger ?”
The witness replied, “ I fetched him one trip with me on the-Montezuma. I was up with him till we came below Marietta, the principal part of the time. After we got below there, I trusted him a little more .to himself — the water was better. Well, we had no trouble until we came down to Manchester. He came pretty near running over the Swiftsure, but he didn’t do any hurt,” etc.
The door was fairly opened for this question and answer, by the counsel for defendant, in the course taken on the cross-examination.
It is claimed that the judge of the superior court erred in his charge to the jury, in this, that he instructed the jury that “ if the danger of collision arose suddenly and by the fault of the defendants, the plaintiff is entitled to recover, even if he-did make a mistake, unless such mistake contributed to the injury and was such an one as pilots using ordinary care, skill, prudence and knowledge should not, under the circumstances, have made; and if any such mistake is set up in the defense, it is for the defendant to satisfy the jury that it was made.”
And again, that “ if the defendants claim that they were in. *398 •the wrong, yet that the plaintiff was also in the wrong, and that therefore it is a case of mixed fault, it is for the defendant to show satisfactorily to the jury wherein the fault of the plaintiff lay.”
It must be borne in mind, that the court gave these instructions to the jury by request of counsel for plaintiff, but qualified in both instances by language like this:
“ It is incumbent on the plaintiff, in the first place, to show that he navigated skillfully, prudently and diligently. In other words, that he was without fault.”
I am at loss to know how the counsel for defendant below, •could take exceptions to this charge.
The jury were instructed by the judge, in terms, that the plaintiff must fjrst show that he was without fault — if, after this, there was any pretense set up by defendant that the plaintiff was in fault, it was incumbent on him to show satisfactorily to the jury wherein the fault of plaintiff lay.
This could not have misled the jury, and was as favorable to defendant as he had any right to claim under the circumstances.
As to the objection raised against a judgment upon the verdict : The bill of particulars is required to be filed and to specify the sum demanded by plaintiff, for two reasons: First. That the defendant may pay off the claim when process is served. Second. That if the claim be not paid, bond may be given in double the amount.
In the present case, the owners of the Clipper saw fit to contest the entire claim of plaintiff. They might have settled it at the commencement of the suit for two thousand dollars, the amount of damage which the plaintiff inserted in his affidavit.
It turns out, upon more mature investigation, that the plaintiff estimated his damages too low.
His counsel, however, have taken the precaution to set the •sum high enough in the writ and declaration.
The jury return in their verdict an assessment of the plain" tiff’s actual damage at the sum of $3,760.
*399 But, they say further, if the damages are to be confined tc the bill of particulars, then we assess the same at $2,507; and leave the court to decide which sum the plaintiff is entitled to receive.
The court below decided that the plaintiff was not limited in his recovery, to the amount stated in his affidavit, and entered judgment for the actual damages returned by the jury. In this the court acted correctly.
The plaintiff cannot, in general, recover for other items than those stated in his bill of particulars; but he may prove a greater value on the trial than he has specified in his bill, and he is at liberty to recover according to his proof of value, if this does not exceed the amount laid in the declaration. But this is an action of trespass, and it would be extraordinary, indeed, if the plaintiff should set forth in his affidavit the actual amount of damages which a jury would assess in his behalf.
The truth is, an unliquidated claim in damage is of too indefinite a character to form what is technically called “ a bill of particulars.”
The plaintiff can only state within bounds what he may, at the time, be willing to receive as satisfaction for his injury. This will enable the defendant to settle the claim, and save costs. It will also aid in fixing the bond which is to be taken in double the amount, but it-will not have the effect to restrict the finding of the jury.
It is said that in this way the bail may be injured. Not so. The bail undertake for double the amount set forth in the bill of particulars, and to that extent will be held liable, but no further. If the plaintiff should recover ten thousand dollars, when he had stated but two thousand in his bill of particulars, the bail of defendant could be holden for no more than four thousand, or double the sum claimed to be due. We have looked through the whole case, and are satisfied that the court below very properly refused a new trial.

Judgment affirmed.