Dickman, J.
It appears from the record, that at the organization of the Iron Railroad Company in the year ■1849, Plenry Blake subscribed for eighty shares of its capital stock, of the par value, of fifty dollars each. Between the 23d of April, 1849, and the 1st of July, 1851, inclusive, sixteen installments of stock, in the aggregate equal to the full amount of his subscription, were called for by the company. At the time of his death, on the 28th of July, 1851, Blake had paid six of these installments as called for —the last being that of March 1st, 1850. He had also made a cash payment in addition to paid' calls, and his administrator made a further cash payment in July, 1853, leaving an unpaid balance on his original stoek subscription. Up to the year 1864, the stock of the company,- when paid up in full,' had but little market value, and in the year 1855 the administrator of Blake declined to pay the unpaid calls.
It is contended in behalf of the company, that the cause of' action of the plaintiff below, accrued at the date of ■this declination by the administrator, and that more than ■fifteen years having thereafter elapsed, prior to the commencement of this action, it is consequently barred by the *329 statute of limitations. The company’s right of action to recover installments of Henry Blake’s subscription, did not accrue until calls were made for the same, and such right of action being upon a promise in writing, the limitation was fifteen years. Gibson v. C. & N. R. Turnpike & Bridge Co., 18 Ohio St., 396; Warner v. Callender, 20 id., 190. The company, within the period of statutory limitation, did not see fit to avail itself of its right, given by statute, to collect by action the unpaid installments on Blake’s subscription, or to sell the stock at public auction, for the payment of such installment. The owner of the eighty shares had thus good reason to conclude, that the company did not intend to enforce payment of the delinquent calls, or to foreclose him by sale of the right to comply with the corporate regulations, pay up the balance due on the stock, and clothe himself with all the rights of a stockholder. Accordingly, on the 25th of February, 1873, the defendant in error, Jacob Fink, as assignee and owner of the eighty shares, tendered to the proper officers of the company, the amount of the installments remaining unpaid, with the interest thereon, and demanded the issue to him of stock certificates, which the company refused. Upon such demand and refusal, a cause of action accrued to Fink, and suit was thereafter begun, on the 31st day of December, 1873. In Railroad Co. v. Robbins, Admr. etc., 35 Ohio St., 483, it was held, that until the transfer of the stock to the holder of the original certificate was refused, the statute of limitations did not begin to run. The rule adopted in that case, applies, we think, with increased force to the case at bar, and we must hold, that the statute did not begin to run against the defendant in error, until he had made his demand on the company for the certificates, and met with a refusal.
It is urged by the plaintiff in error that the contract of subscription was abandoned by Hawley, the administrator, when he declined to pay the unpaid calls, and that such abandonment was acquiesced in by the company. The record, in our judgment, discloses a state of facts which *330 shows that the company, after the assignment 'of the stock on May 5th, 1870, by James H. Blake, the residuary legatee, to Jacob Fink, recognized the contract as still in existence. Where one has once been entitled to repudiate a contract, because it has not been performed in a reasonable time, if he do any act which amounts to an admission of the existence of the contract, he cannot afterwards elect to treat it as void. Brindley v. Tibbets, 7 Greenleaf, 70; Lindsey v. Gordon, 1 Shepley, 60; Barry v. Palmer, 19 Maine, 303. Before purchasing the stock Fink had an interview with the president of the company, and was .informed by him that, if he-obtained the stock in question from James H. Blake, he ought to have certificates for what would be paid up by him. Having 'thereupon purchased the stock, he attended a meeting of the directors of the company in the spring of 1872, presented to them the assignment of stock executed to him by James H. Blake, and made claim to stock certificates for the same. When the meeting was over he was notified, in behalf of the directors, that the matter of the certificates had been referred to the company’s attorney, and a record of the company, as testified by its secretary, shows such to have been the fact. The company’s attorney afterwards, in the presence of its president, told Fink that the matter of his stock certificates would be “ fixed up ” at any time, when he brought to the company the requisite amount of money. Thus encouraged by the chief officer of the company to purchase the stock, and afterwards assured that by paying up all arrears he could obtain the usual stock certificates, he complied with the condition imposed, and on the 25th of February, 1873, tendered to the proper officers of the company the unpaid installments, with the accrued interest. With these facts before us we cannot treat the contract of subscription as abandoned, and no longer in existence for the enforcement of its provisions.
If the company had deemed it expedient that the account of Henry Blake upon its books, in reference to his stock subscription, should be closed, a feasible mode of procedure was *331 provided by law. Before and since the date of the subscription the provisions of section 3253 of the Revised' Statutes have been in force. By that section, if an installment of stock remain unpaid for sixty days after the time it is required to be paid, whether such stock isÉheld by an assignee, transferee, or the original subscriber, the same may be collected by action, or the directors may sell the stock so unpaid at public auction for the installment J:hen due thereon —the prescribed notice being first given; and if any residue of money remain after paying the amount due on the stock, the same shall, on demand, be paid to the owner; and if the whole of the installment be not paid by the sale, the remainder shall be recoverable by an action against the subscriber, assignee, or transferee. Although Hawley, the administrator, had ample assets in his hands, and upon final settlement of the estate transferred ’over five thousand dollars to the residuary legatee, the company took no steps to collect by action the unpaid subscription, or by sale at auction to change the ownership of the stock, and put it in the name of another person than the original subscriber. In the face of these statutory provisions it was not within the power of the company to declare the stock of Henry Blake forfeited, charge back to the estate the amount paid on the subscription by him and his administrator, appropriate and convert that amount to the company’s own use, and thus terminate and destroy his interest, and that of those claiming under him, in the stock subscribed. The statute operates in a spirit of justice both toward the delinquent subscriber and the company, whose success or failure in the object of its creation depends in a large measure upon the prompt payment of stock subscriptions, securing to the one the residuo remaining after paying from the proceeds of sale the amount due on the stock, and giving to the company a right of action against the subscriber for the remainder of the installment, if the proceeds of sale are insufficient to pay the whole. If the subscriber is unable to pay the calls made by the company, the design of the statute is to secure to him an honest disposition of his shares by *332 sale at public auction to the highest bidder. If not thus disposed of, or sold by the subscriber himself, they continue his property. They do not fall back into the general property of the corporation, and become merged therein, so that the corporation is at liberty to issue and sell new shares in their stead. If the corporation elects to waive its rights, and neglects its duty, it cannot complain if the subscriber asks to pay up his subscription in full, receive the certificates of his stock, and to be invested with the privileges of a stockholder. We say “duty,” because, as said by Lord Cranworth in Spackman v. Evans, L. R., 3; H. L., 186, “The shares are, in substance, made a security to the company for the money from time to time becoming due from the shareholder. The duty of the directors, when a call is made, is to compel every shareholder to pay to the company the amount due from him in respect to that call; and they are guilty of a breach of their duty to the company if they do not take all reasonable means for enforcing that payment.” The stock in the name of Henry Blake may have been much depreciated in value when the administrator declined to use money of the estate, in his hands, to pay the overdue calls-; yet, it then became regular and legitimate for the company to sell the stock at public auction for what it would bring, and after applying the proceeds of sale, to hold the estate for the balance unpaid on the installments, and thereby place the stock beyond the reach of the administrator, residuary legatee, or his assignee. But the company failed to adopt the statutory method of foreclosing the interest of the original subscriber. The title to the stock for which he subscribed remained unchanged and unimpaired by any action on the part of the company, with no bar to the right of the subscriber, or those claiming under him, to convert the shares into full paid up stock, and call for certificates.
But, the question arises, had Fink the right to demand the issue to him of certificates for the stock he had purchased from the residuary legatee, and what was his remedy, when the company refused to comply with the demand? Though *333 holding no certificates as indicative of legal ownership, he was doubtless the equitable owner of the shares subscribed by Henry Blake. As such owner, seeking not only a transfer to himself of the specific property — the eighty shares — but other equitable relief in reference thereto, it came within the province of a court of equity to extend to him its aid. It is said however, that courts of equity do not entertain jurisdiction for a specific performance on the sale of stock, where a compensation in damages would furnish a complete and adequate remedy. But courts of equity will not refuse to entertain jurisdiction, when, in connection with the relief of decreeing a transfer of specific property, a further and essential relief is asked, which those courts, by their procedure, are. best adapted to furnish. Fink, as equitable owner, is seeking not only an issue to him of stock certificates, and to be recognized and treated as a stockholder, but he prays for relief by way of account— running through many years — of cash and stock dividends declared, of profits arising in any other manner upon his stock, of the increase and gains of the company since its organization, of the disposition of such increase and gains, and the shape in which they now stand — relief especially equitable in its character, and which he could not adequately obtain through an action at law for the recovery of damages. As far as his remedial rights are concerned, we do not think he should be treated as a delinquent subscriber to stock, and be debarred the privileges of a stockholder, for, although neither Henry Blake, nor his administrator, nor James H. Blake ever fully paid the original subscription, Fink, in that regard, is chargeable with no default, his tender of the full amount due on the subscription having been refused by the company.
The practice of courts in the exercise of chancery powers, to decree the transfer of stock by corporations, is settled by well adjudged cases. In Hill v. Rockingham Bank, 44 N. H., 567, it was held that a bill in equity will lie to compel the delivery of certificates of stock to one who has already an equitable title to such stock, although a suit at law *334 might also be maintained therefor. In Cushman v. Thayer M. Co., 76 N. Y., 365, which was an action to compel the corporation to transfer upon its books certain shares of stock, and to issue a new certificate, the court say: “ The jurisdiction which courts of equity exercise over individuals, extends equally to acts done or omitted to be done by private or municipal corporations. And the power to compel a transfer of specific property is- a salutary one, and should be exercised where such relief alone will work a complete and ample remedy.” The same principle has been recognized in other cases, in which courts in the exercise of a sound discretion, have decreed a transfer of stock by corporations, in connection with other equitable relief.
Apart from the aforegoing considerations, it will, we think, be suggested by the record that the apparent effort of the plaintiff in error to retain, without accounting, the several sums of money paid to the company by Henry Blake and his administrator, does not forcibly commend itself to the equity and good conscience of the court, when asked to refuse all equitable relief, and remand the defendant in error to his action at law for damages.
In our opinion there should be an affirmance of the' judgment of the district court.

Judgment accordingly.