Bradbury, J.
The circuit court reversed the judgment of the superior court upon the ground that the latter court erred in instructing the jury as requested by the street railway company, and in refusing to give certain instructions asked tobe given by the administrator, plaintiff in that court. The plaintiff in error contends that the bill of exceptions taken to the rulings of the superior court was not perfected within the time prescribed by statute, and therefore not being warranted by law, was inoperative, and gave no jurisdiction to the circuit court to hear the questions upon which it reversed the judgement of the superior court. It is conceded that this objection was not made in the circuit court, and for that reason contention is made that this court should not listen to it now. The general rule, doubtless, is for this court to disregard questions not made in the court whose judgment is under review.
However, if the court, whose judgment is under consideration, was without jurisdiction over the subject matter in contention, the rule does not apply, and that question may be raised here, although not brought to the attention of the lower court. Doubtless an orderly course of procedure, and thorough fairness towards that court, would require the question of its jurisdiction to be made there in *187 the first instance, but a failure to do so is not fatal to the right to contest the question here.
The exceptions to the rulings of the trial court in giving and refusing certain special instructions requested by the parties were made on the 8th day of February, 1894, the day that the jury were instructed. A motion for a new trial was filed February 10, 1894, including, among other grounds of error, the action of the court in giving and refusing to give to the jury such special requests ¡which motion was overruled and a judgment entered on the verdict on March 3, 1894. On April 17 following, a period of forty-five days after the motion for a new trial had been overruled, and sixty-eight days from the day the exceptions were noted, the plaintiff below presented the bill of exceptions to the trial court for allowance, and the court then extended the time therefor ten days beyond the time allowed by statute, which was then fifty days, and on April 24, 1894, within the period of the ten days extension, the bill of exceptions was signed, sealed, allowed and ordered to be made a part of the record in the cause. This statement of the dates upon, and the order in, which the several material events occurred shows that the bill of exceptions was presented to the trial judge for an extension of time for signing it, on the forty-fifth day from the overruling of the motion for a new trial, and the sixty-eighth from the day the charge was made and exceptions thereto noted; and it was signed by the judge seven days later.
The statute by its own force allows fifty days for perfecting a bill of exceptions, and, provided it is presented to the trial judge at least five days before the fifty days have expired, he may allow ten days more for the purpose of signing the same. *188 Pugh v. State ex rel., 51 Ohio St., 116. It is therefore apparent that the validity of the bill of exceptions. in this case depends upon the event from which the computation of time shall be made. If, from the overruling of the motion for a new trial, it is valid, because it was presented to the trial judge on the forty-fifth day thereafter, that being at least five days before the expiration of the fifty days; the judge then extended for ten days the period for signing the same, which g’ave for that purpose a total of sixty days. On the seventh day after the extension was granted, or the fifty-second day from that on which the motion for a new trial was overruled, the bill of exceptions was signed by him.
If, however, the computation be made from the day on which the charge w;as given and the exceptions to it noted, then the application for an extension of time and the subsequent signing of the bill of exceptions were both too late, the former having been made sixty-eight days after, and the latter act occurring seventy-five days after the exceptions had been noted.
This court held in Earp, Supervisor, v. R. R. Co., 12 Ohio St., 621, that a party who, on the trial of action, takes exceptions to the decision of the court upon the admission of testimony, and to the charges of the court to the jury, and has those exceptions reduced to writing and signed by the judge, may allege error in a petition filed in the district court without filing a motion for a new trial in the trial court upon those grounds. Doubtless the law is the same now; for in this respect the existing statute is similar to the one then in force. Counsel contend that because a motion for a new trial is not necessary to preserve the right *189 to review a charge of the court, the time within which a bill of exceptions should be taken for that purpose begins to run from the day the charge was given. This contention would be sound in a case where a motion for a new trial was not made, and the party excepting choose to rely upon the exception taken during the course of the trial. The choice, however, is with him. By the express terms of section 5301, Revised Statutes, he may include these grounds of error in the motion for a new trial. The language of section referring to this matter is, where “the exception is to the decision of the court on a motion * " * for a new trial for misdirection by the court to the jury, * * * the party excepting must reduce his exceptions to writing and present them to- the trial judge or judges for allowance within fifty days after the overruling of the motion for a new trial. The language of this section,- we think', fully authorizes a party excepting to a charge of the court to include the alleged error in the motion for a new trial; it is just and reasonable to afford by that means an opportunity to the trial-judge to review his rulings, which often times must be made without access to authorities or time for deliberation. And where this ground of error is included in the motion for a new trial, the time within which the bill of exceptions must be taken runs from the overruling of such motion.
We are not aware of any holding of this court that can be construed as militating against these views. It follows, therefore,- that the bill of exceptions was allowed and filed within the time allowed by law.
The bill of exceptions discloses that the intestate of the plaintiff below was a boy about four *190 teen years old, who had steady ein.ploym.ent in a type foundry in Cincinnati and was accustomed to go to and from his work unattended; that the deceased and two or three other boys on the evening of the accident, just at dark, were riding along one of the public streets of Cincinnati on a four wheeled dray, without the knowledge of the driver; that while the boys were so riding, a street car of the defendant below, collided with the dray and thereby caused the death of the intestate. There was evidence tending to prove, and other evidence tending to rebut ■ negligence in running the street car, and in the driver of the dray, contributing to the collision. The record, however, discloses no evidence of any act whatever done by the deceased that contributed to produce the collision. Nor was there any evidence whatever of negligence on his part that contributed to his injury, unless the simple fact that he was riding in a private vehicle without the knowledge of the driver, along a • public street whereon the electric street railway was operated, and was killed by a collision between such vehicle and a street ear, affords grounds from which contributory negligence might be inferred againsthim.
After the evidence had been introduced the defendant below requested the court to give, and the court did give to the jury, over the objections of plaintiff below, the following special instructions:
“IV. If you find that Joseph Wright was fourteen years old and upwards at the time of the accident, and was entrusted with the performance of work so that he was earning ordinary wages of such a boy, and was accustomed to going without guidance or assistance of his parents to and from bis place of business or employment, you may then *191 find that he was chargeable with the responsibility of such age and discretion, and to the observance and performance of ordinary acts of care ; that is to say, he was bound to know the danger if there were danger, in riding upon the dray in the way described by the evidence, and especially the danger, if there were danger, that would be encountered in case of collision between the dray and any other vehicle or car when riding in sucha position; and if you find that Joseph Wright at the time of the accident was sitting or riding upon the dray in question in a hazardous or dangerous position, then I charge you it will be your duty to consider and determine whether he was guilty of contributory negligence; and if you find he was, then the plaintiff cannot recover. ’ ’
Conceding that the danger to be apprehended from the act of riding upon a dray along a public street of a populous city upon which an electric railway was being operated was so great, that from such act alone negligence might be inferred against an adult person who should do so in the manner and at the time that the intestate did; nevertheless, the degree of responsibility imposed by the foregoing proposition upon intestate was too high. We know of no rule of law that imposes upon a boy of fourteen who may go out to work and earn wages; and go about the streets of a city unattended, a higher degree of care concerning his safety, than a boy of the same age and equal intelligence who, unattended, may go to and from school, or roam about the streets unemployed. The record does not show any attempt to prove that the intestate was unusually bright and intelligent. There is no presumption that a boy who goes out to work for wages can discern danger *192 more readily than one who does not. He may have been sent out to earn wages for the very reason that he was dull at his books, or from his own necessities or those of his parents. The subject is purely speculative. Doubtless certain occupations tend to quicken the perceptions and ripen the judgment. "Whether any particular occupation has accomplished this end for a boy in any case is a question of fact for the determination of the jury, and not one of law to be decided by the court. The intestate in the abseñce of proof that he was specially intelligent, was bound to no higher care respecting his personal safety than other boys of his age were accustomed to exercise under similar circumstances. Rolling Mill Co. v. Corrigan, 46 Ohio St., 283.
3: The plaintiff below requested the trial court to give the following proposition to the jury:
“II. If the jury believe from the evidence in this case that the plaintiff’s intestate, Joseph Wright, was at the time he lost his life, riding in the rear part of a wagon or dray, driven by one Albert 'Kees, and that the said intestate, Joseph Wright, had nothing to do in any way with the driving, control, or management of said wagon or dray by said Kees, that then the negligence of said Kees, if any has been proved, in driving said vehicle across Elm street at the said intersection of Fifteenth’street, .cannot be imputed to the said intestate so as to charge him with contributing to his own injury.
“III. The jury are instructed that if they believe from the evidence in this case that the plaintiff’s intestate, Joseph Wright, while lawfully riding on a wagon or dray driven by Albert Kees across the intersection was on his (Joseph Wright’s) part, *193 killed by a collision between the said wagon or dray on which, he was then riding, and one of, the defendant’s street cars, and that such collision was caused by the negligence of the defendant, its agents or servants, in running its street cars at and across the public.crossing at the intersection of Elm and Fifteenth streets, then the defendant is liable to the plaintiff in this action. •
“If the jury shouldfind that such collision, under the circumstances stated above, killed the plaintiff’s intestate, Joseph Wright, without any negligence on the.part of the said intestate, and was caused by the joint and concurring negligence of the • defendant, its agents or servants in charge of the street car and of the driver of the wagon or dray on which the said intestate was then riding, that then the defendant, The Cincinnati Street- Railway Company, is liable to the plaintiff in this action. ”
The court declined to submit this proposition to the jury, which ruling the circuit court held to be erroneous.
In Thorogood v. Bryan, 8 C.B., 115, cited in Catlin v. Hill, 8 Manning, Granger & Scott, 129, the court held that one who took passage in an omnibus and was injured by the concurring negligence of the driver of the vehicle in which he was riding and of the driver of another omnibus, could not recover on the ground that, by selecting the omnibus in which he made his journey, he became identified with it. Coltman, J., saying: “The passenger is so far identified with the carriage in which he is traveling that want of 'care on the part of the driver will be a defense” for an injury caused to such passrenge by the carelessness of the driver of another carriage. This case was the progenitor of this branch of the doctrine of imputed negligence. It seems *194 impossible to maintain the doctrine, as announced by that case, except, by assuming that the party injured, by selecting the vehicle in which he was riding*, made its driver his servant. This notion was expressly repudiated in 1887 by the English Court of Appeals and the case of Thorogood v. Bryan overruled in Bernina, L. R., 12 Prob. Div-., 58; Lord Esher saying, lb., 68: “In truth the judgments in Thorogood v. Bryan all amount to saying that by what the plaintiff did (taking passage in an omnibus), he made the driver his agent so as to be liable for his acts, as if he, the plaintiff, had himself done those acts. But if he did make him his agent at all, he must in consistency, not only be by reason of such liability deprived of his remedy against third persons, but must be affirmatively liable to third persons.. In truth, the driver in the ease is not the servant or the agent of the passenger, and has not even any one. of the attributes which are evidence of being even like a servant or agent.”
This later view of the doctrine of imputed negligence has been adopted in this state. Transfer Co. v. Kelly, 36 Ohio St., 86; Street Ry. v. Eadie, 43 Ohio St., 91; Davis v. Guarnieri, 45 Ohio St., 470; Railroad Co. v. Manson, 30 Ohio St., 451; Railroad Co. v. Snyder, 18 Ohio St., 399.
The same view of the question was adopted by the Supreme Court of the United States in Little v. Hackett, 116 U. S., 366; and the doctrine of the case of Thorogood v. Bryan repudiated upon the ground that contributory negligence to defeat a recovery must be that of the party injured or of some one to whom he stood in the relation of master or superior, and that such relation did not exist between the driver of a public hackney coach and one who *195 hired it for driving about a city for recreation and pleasure.
In the course of his opinion, Justice Field says: “That one cannot recover damages for an injury to the commission of which he has directly contributed, is a rule of established law and a principle of common justice. And it matters not whether that contribution consists-in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong. It would seem that the converse of this doctrine should be accepted .as sound — that when one has been injured by the wrongful act of another, to which he has in no respect contributed, he should be entitled to compensation in damages from the wrong-doer. And such is the generally received doctrine unless a contributory cause of the injury has been the negligence or fault of some persons towards whom he sustains the relation of superior or master in which case the negligence is imputed to him, though he may may not have personally participated in or had knowledge of it. ” '
This, we think, places the doctrine of contributory negligence upon a sound foundation. In order that it shall operate to defeat a recovery it should be some act or omission of the' party himself or of some one towards whom he stood in the relation of master or superior. 1 Sherman &Redfield onNeg., 66.
The driver of a private vehicle, upon which another may be riding, without the driver’s knowledge, is in no proper sense the servant or agent of the latter. The relation of the person so riding *196 may be that of a trespasser to the owner of the vehicle or even to the driver, but he is in no sense of the term the master or superior of the driver. Nor has the act such character that on account of it he should be denied a remedy for injuries sustained by the negligence of another.
The intestate in this case, even if he was, without the knowledge of the driver, riding upon a wagon or dray along the streets of Cincinnati, did not thereby violate any duty he owed to the street railway company. It was a matter affecting himself on one side and the owner or driver of the vehicle on the other. Whether the latter had some just grounds of complaint or not, did not concern the street railway company. True, it is possible that the driver might have used greater care than he did had he known the intestate was on the vehicle. That, however, is purely speculative, and, therefore, too uncertain to become a predicate for affecting the respective rights of the parties. However, if it should be conceded that the driver would have been more careful if he had known the boy was on the dray, no principle is apparent by which the street railway company could be relieved. The basis of its liability is its own wrongful conduct and in such case we have seen its only way of escaping from the consequences of this wrongful conduct is through some wrongful contributory act or omission of the injured person, himself, or by some one to whom he bore the relation of master or superior; and that relation is not created by the simple act of boarding a private vehicle without the knowledge of the driver.

Judgment affi/nned.