Hillsborough,
June, 1900.

WARREN, *Adm'r*, v. MANCHESTER STREET RAILWAY.

The negligence of a parent in permitting an irresponsible infant to be exposed to danger is not imputable to the latter.

In an action by an administrator for injuries resulting in the death of an infant intestate, the father of the deceased is not to be regarded as the plaintiff in interest, although he may be pecuniarily benefited by the result of the suit.

Whether a person acting under excitement and in the face of impending danger exercised ordinary care in the adoption of a given course, is a question of fact and not of law.

The duty of a street railway company to equip its cars with safety appliances is not limited to such as may be conveniently used, but includes the adoption of those which men of average prudence would employ under the same circumstances.

The denial of requests for specific instructions is not erroneous when their substance is included in the charge.

CASE, for negligence. Verdict for the plaintiff. The defendants, while running an electric car in a public street in Manchester, struck and killed the intestate, an infant three years old, who had left his home unobserved ten minutes before the accident. His mother was ill in bed, and his father was away at work.] The plaintiff's evidence tended to prove the following facts: When the car was about fifty feet from the place of the accident, the child was within four or five feet of the track, walking slowly

toward it.   Apparently the motor-man did not notice him.   The car was running twelve to fifteen miles an hour, and the motor-man did not put on the brake in season to avoid the injury.   The accident occurred on the afternoon of a summer day, and there was no obstruction to prevent the motor-man from discovering the child sooner than he did.   The car had no fender attached to it. If there had been one, the danger of injury would have been much less.

The defendants' evidence tended to prove that the child started suddenly from the side of the street to cross the track, when the car was nearly opposite to him, and that the motor-man, on account of excitement, failed to reverse the power.

Subject to the defendants' exception, the intestate's father was not allowed to testify upon cross-examination whether or not he permitted the intestate to go out unattended. The defendants excepted to the refusal of the court to instruct the jury as follows:

1.   If you find that the child strayed into the street by reason of the negligence of its parents, and this contributed to the injury, the plaintiff cannot recover.

2.   If you find that the motor-man was acting under excitement at the time of the accident, and by reason thereof erred in what he did,— that is, used the brake when he ought to have used the reverse,— it was not negligence.

3.   If you find that the motor-man, up to the time of the accident, was in the exercise of due care, and that when he saw the danger the child was in he acted under the influence of sudden excitement, and on that account erred in judgment by using the brake instead of the reverse lever, his conduct in so doing was not negligence.

4.   If you find that such a fender as the defendants could have conveniently used upon the car at the time of the accident probably would not have saved the life of the child, the absence of it was not negligence and cannot be considered in determining the question of the defendants' liability.

The court instructed the jury in part as follows: "It was the duty of the defendants to use due care to select competent servants to manage their cars, and if they failed to exercise such care, they were negligent. . . . It was the duty of the defendants to equip their cars with such safety appliances as men of average prudence would use under the same circumstances.   They were not bound to adopt all such devices as are put upon the market; but if they failed to use such safety appliances as reasonably prudent men would use in the same circumstances, they were negligent."   Subject to the defendants' exception, the court refused to qualify these instructions by adding, "if the failure to make the proper

selection of servants or furnish the proper appliances contributed to the accident or injury," for the reason that the qualification asked for was contained in another part of the charge.

*Burnham, Brown & Warren,* for the plaintiff.

*Oliver E. Branch* (with whom were *Elijah M. Topliff* and *Joseph W. Fellows*), for the defendants.

I.   The plaintiff's right of action is derived entirely from the statute.   Neither he nor the estate of the decedent is entitled to the damages recoverable.   P. S., c. 191, ss. 12, 13.   In this case the amount recovered, less expenses, would be distributed to the father.   P. S., c. 191, ss. 1, 6.   The father was, therefore, the real party in interest.   If he was guilty of contributory negligence, it is a defence to the suit; and it was error for the court to exclude evidence tending to show such negligence, and not to instruct the jury upon that point as requested.

" In law some persons are independent, and some are subject to another. . . . This rule applies to infants in their relations to society, who are of such tender age that they are incapable of self-control and personal protection.   An infant, in its first years, is not *sui juris.*   It belongs to another, to whom discretion in the care of its person is exclusively confided.   The custody of the infant of tender years is confided by law to its parents, or those standing in *loco parentis;* and not having that discretion necessary for personal protection, the parent is held, in law, to exercise it for him, and, in cases of personal injuries received from the negligence of others, the law imputes to the infant the negligence of the parents.   The infant being *non sui juris,* and having a keeper, in law, to whose discretion, in the care of his person, he is confided, his acts, as regards third persons, must be held, in law, the act of the infant; his negligence, the negligence of the infant." *Mangam* v. *Railroad,* 38 N. Y. 455.   See, also, *Holly* v. *Gas Light Co.,* 8 Gray 123 ; *Wright* v. *Railroad,* 4 Allen 283 ; *Lynch* v. *Smith,* 104 Mass. 52; *Grant* v. *Fitchburg,* 160 Mass. 16 ; *Cosgrove* v. *Ogden,* 49 N. Y. 255 ; *Pendergast* v. *Railroad,* 58 N. Y. 653 ; *Fallon* v. *Railroad,* 64 N. Y. 13 ; *Weil* v. *Railroad,* 119 N. Y. 147 ; *Pennsylvania R. R.* v. *James,* 81 Pa. St. 194 ; *Old City Bridge Co.* v. *Jackson,* 114 Pa. St. 341 ; *Johnson* v. *Railroad,* 160 Pa. St. 647 ; *Mayhew* v. *Burns,* 103 Ind. 328 ; *Pekin* v. *McMahon,* 154 Ill. 141 ; *Rosenkranz* v. *Railway,* 108 Mo. 9 ; *Coal Co.* v. *Brawley,* 83 Ala. 371 ; *St. Louis R. R.* v. *Freeman,* 63 Ark. 41 ; *Barrett* v. *Company,* 91 Cal. 296.

The principle underlying the whole doctrine of contributory negligence arises out of the fundamental axiom that no one shall

be permitted to take advantage of his own wrong.   The fact that in this case the suit is brought by a stranger in his representative capacity, for the benefit of the father, does not alter the principle nor change the plain, rightful, legal, and moral proposition that the father's negligence, if shown, in exposing the child to the danger of being killed, or of not using reasonable precautions under the circumstances to prevent it, should prevent him from recovering damages on account of such negligence, and obtaining pecuniary compensation for his neglect of a primary duty which he owed to himself, the child, and the public.

It is contended that the statute under which this action is brought creates a cause of action in favor of the estate of a deceased person, and that, therefore, the intestate's father is not the real party in interest.   If this were the true view and correct construction of the statute, it would not alter the essential fact that the intestate's father would have the beneficial interest in a judgment, since the child's estate would descend to his father.   But such is not the correct construction of the statute.   *Cogswell* v. *Railroad*, 68 N. H. 192.

The cases relied upon in support of our position, that the negligence of the father is a defence to this action, do not proceed upon the theory of agency.   On the contrary, the *ratio decidendi* of those cases is, that the action being brought for the benefit of the parent, and not of the child, his negligence, if it contributed in any degree to produce the injury, is on general principles a defence. Where the action is brought for the benefit of the parent, as in this case, the doctrine of "imputed negligence" does not apply. It is only in certain cases where the action is brought for the benefit of the child itself, that it is said that the negligence of the parent may be "imputed" to the child.   But where the action is brought by the parent directly or indirectly for his *own* benefit, then it is his own negligence which is offered in defence.   The suggestion that the doctrine of imputed negligence is not sound unless the reverse of the proposition is true, namely, that the negligence of the child may be imputed to the father, is not material. But if it were, the plaintiff's position is erroneous since the custody and care of a parent is not entrusted to the child by statute or rule of law.   When it is, the question of imputed negligence of the child to the parent may arise.

The cases cited by the plaintiff do not sustain his position. *Newman* v. *Railroad*, 52 N. J. Law 446, was an action brought by a child two years old, who, having been carelessly left by his sister, in whose custody he was, strayed upon the defendants' premises and was injured.   *Robinson* v. *Cone*, 22 Vt. 213, was an action brought by a boy about four years old, who was injured while coasting on

a highway. *Felch* v. *Railroad*, 66 N. H. 318, does not conflict with the defendants' position, for there it appeared that the boy was eleven years old and therefore *prima facie*, as well as upon the evidence, *sui juris*. *Bisaillon* v. *Blood*, 64 N. H. 565, is not applicable here, for the suit was brought by the child, who was the real party in interest; but we suggest that upon a re-examination of the reasoning in that case, in the light of decisions in other states, a different conclusion would be reached. The proposition that "an infant plaintiff would be entitled to damages for the defendant's negligent injury to his property, similarly exposed to danger by the carelessness of his guardian," is not supported by the cases to which reference is there made, and the decision turned upon the general proposition that the plaintiff was *non sui juris*, and was as much entitled to the protection of the law as his chattel.

We submit that the reasoning in *Hartfield* v. *Roper*, 21 Wend. 615, affirmed in *Mangam* v. *Railroad*, 38 N. Y. 459, as well as in many subsequent New York cases, cannot be successfully assailed, even in actions brought for the benefit of the child itself if it is *non sui juris*. When the child is *sui juris* and in the exercise of ordinary care, the contributory negligence of the parent cannot be a material element, since all the law demands is ordinary care on the part of the person injured.

II.   There was evidence tending to show that the child suddenly started from the side of the street when the car was nearly opposite to him, and that the motor-man, acting under the excitement of the moment and of the imminent danger which the child was in, applied the brake, which he then held in his hand, to stop the car. The plaintiff contended that he should have let go the brake and applied the reverse lever. It is submitted that if the jury found that the fact was as stated, there was no negligence of the defendants in that respect, and that the jury should have been so instructed. The law does not demand or require inerrant conduct from any one. It recognizes human limitations. It recognizes the fact that a person charged with great responsibility may be suddenly confronted with an emergency, and compelled instantly to make a choice of hazards, or a choice of means of preventing disaster, and that he may err in so doing; and that his error is excusable if made, since the circumstances prevent him from exercising a firm judgment or a wise discretion. Accuracy of judgment is not required. This rule of law is well settled in all cases where a person confronted with a sudden emergency and compelled to act instantly must adopt that course of conduct which at the time seems to him best. The only limitation upon the rule is that such a person must not have placed himself in that peril

by his own negligence. The requests were strictly in accordance with these rules and should have been given. *Folsom* v. *Railroad,* 68 N. H. 454, and cases cited.

III. The defendants' fourth request was erroneously refused. There was evidence tending to show that a fender which would have come within six to twelve inches of the rail would have afforded no protection to the child, and that owing to the grade of the streets over which this car passed it was impossible to provide fenders which would be nearer than twelve inches. The rule requiring street railway companies to provide cars with suitable safety appliances does not require them to do the impossible or the impracticable; and it was for the jury to determine whether in this specific case, under the circumstances and from all the evidence, the absence of a fender at that time was negligence. It is true that the court in general terms stated the defendants' duty in respect to safety appliances; but a general, elementary, academic statement of a principle of law is not all that is required in a charge to the jury. The charge should clearly inform the jury of the rules of law applicable to the special facts and circumstances of the case; and in this case the defendants were entitled to an instruction concerning which there could be no mistake or doubt, regarding the particular charge of negligence as to the absence of a fender and the defence to the charge.

It is further submitted that the court erred in not qualifying the two instructions given by the court as requested by the defendants. It is not for the jury to consider, neither is it for them to know (especially when a consideration of the question may mislead them, or divert them from the facts in the case), what the general duty of a defendant is, except so far as it may enlighten or inform them upon the *special* duty or liability in that case. Conceding that it was the duty of the defendants to use due care in selecting competent servants to manage their cars, and to provide proper safety appliances, unless the neglect of those duties was the cause of or contributed to the injury it is no concern of the jury, and is not properly submitted to them. Those duties become important for them to consider only as and when they contribute to the accident or injury.

PIKE, J. The defendants' exceptions to the court's refusals to permit the father to testify whether he allowed his child to go out unattended, and to instruct the jury that if the child strayed into the street in consequence of the parents' negligence, and this negligence contributed to cause the injury, the plaintiff could not recover, raise the questions (1) whether a parent's negligence is imputable to his child, and (2) whether the father of the intestate is the real plaintiff in this action.

Had the negligence relied upon been that of the motor-man solely, it would be unnecessary to consider these questions; for in that event the father's negligence must have been only a remote cause of the injury, and therefore would be immaterial to the plaintiff's right to recover. The effect of this negligence would have been only to allow the child to be in a dangerous situation. The father's absence would have rendered it impossible for him to avoid the injury at the time. "He who cannot prevent an injury negligently inflicted upon his person or property by an intelligent agent 'present and acting at the time' . . . is legally without fault, and it is immaterial whether his inability results from his absence, previous negligence, or other cause." *Nashua Iron and Steel Co.* v. *Railroad,* 62 N. H. 159, 163; *Felch* v. *Railroad,* 66 N. H. 318; *Brember* v. *Jones,* 67 N. H. 374, 376, 377; *Brown* v. *Savings Bank,* 67 N. H. 549, 551; *Chickering* v. *Lord,* 67 N. H. 555, 557; *Edgerly* v. *Railroad,* 67 N. H. 312, 314, 315, 317. The question for the jury would have been whether or not the defendants by the exercise of ordinary care could have prevented the injury; if they could not, they would have been without fault and not liable; if they could, they would have been "liable whether the intestate was in the street by reason of, or without, his parents' negligence. In cases of this character, where an irresponsible child is, . . . by the negligence of the parent, . . . exposed to peril without an attendant, . . . the question of contributory negligence is not involved." *Bisaillon* v. *Blood,* 64 N. H. 565, 566.

There was, however, other evidence of the defendants' negligence in their failure to provide a fender for the car. If they had provided one, the intestate might not have been injured. This negligence was due to non-action of the defendants at some previous time. It was negligence that occurred in the past, the effect of which the defendants could not avoid at the moment of the accident by the exercise of ordinary care. If, therefore, the father's negligence is imputable to the child, or the father is the real plaintiff, his negligence in allowing the child to stray upon the track was material if it contributed to the injury. *Nashua Iron and Steel Co.* v. *Railroad,* 62 N. H. 159, 165.

The question whether a parent's negligence can be imputed to his child, so as to bar a recovery by the child against a third person, has been considered by the courts of many states, and conflicting conclusions have been reached. The question first arose in *Hartfield* v. *Roper,* 21 Wend. 615, where it was decided in the affirmative. The court said: "An infant is not *sui juris.* He belongs to another, to whom discretion in the care of his person is exclusively confided. That person is keeper and agent for this

purpose; and in respect to third persons, his act must be deemed that of the infant; his neglect, the infant's neglect." This rule was questioned in Vermont soon after its announcement, and has been rejected quite generally elsewhere. In *Robinson* v. *Cone*, 22 Vt. 213, 224, *Redfield, J.*, said: "We are satisfied, that although a child, or idiot, or lunatic may to some extent have escaped into the highway through the fault or negligence of his keeper, and so be improperly there, yet if he is hurt by the negligence of the defendant, he is not precluded from his redress." In *Smith* v. *O'Connor*, 48 Pa. St. 218, 221, the court said: "We are asked to approve and apply the doctrine held by the New York courts, and first enunciated in *Hartfield* v. *Roper*, 21 Wend. 615. There it is ruled that the negligence or imprudence of the parents or guardians in allowing a child of tender age to be exposed to injury in a highway furnishes the same answer to an action by the child as, the negligence or other fault of an adult plaintiff would in a similar case. The negligence of the parents or guardians is imputed to the child, and hence, unless the infant plaintiff has exercised that care and prudence which are demanded of an adult, unless equally guiltless of any negligence concurring with a wrongful act of a defendant in causing an injury, no action can be sustained. This is compelling the child to the exercise, not of its own, but of its parents' discretion. It is holding it responsible for the ordinary care of adults. In our opinion, the rule thus broadly stated does not rest upon sound reason." In *Bellefontaine etc. R. R.* v. *Snyder*, 18 Ohio St. 399, 409, it was said: " It is the old doctrine of the father eating grapes, and the child's teeth being set on edge. The stronge objection to it is its palpable injustice to the infant. Can it be true, and is such the law, that if only one, party offends against an infant he has his action, but that if two offend against him their faults neutralize each other, and he is, without remedy?" In *Newman* v. *Railroad*, 52 N. J. Law 446, 449, 450, *Beasley,* C. J., said: "This doctrine of the imputability of the misfeasance of the keeper of a child to the child itself is, deemed to be a pure interpolation into the law, for until the case, under criticism it was absolutely unknown; nor is it sustained by legal analogies. Infants have always been the particular objects of the favor and protection of the law. In the language of an ancient authority this doctrine is thus expressed: 'The common principle is that an infant in all things which sound in his benefit, shall have favor and preferment in law as well as another man, but shall not be prejudiced by anything in his disadvantage.' 9 Vin. Abr. 374. And it would appear to be plain that nothing could be more to the prejudice of an infant than to convert, by construction of law, the connection between himself and his cus-

todian into an agency to which the harsh rule of *respondeat supe-rior* should be applicable. The answerableness of the principal for the authorized acts of his agent is not so much the dictate of natural justice as of public policy, and has arisen, with some propriety, from the circumstances that the creation of the agency is a voluntary act, and that it can be controlled and ended at the will of its creator. But in the relationship between the infant and its keeper all these decisive characteristics are wholly wanting. The law imposes the keeper upon the child, who, of course, can neither control nor remove him, and the injustice, therefore, of making the latter responsible in any measure whatever for the torts of the former would seem to be quite evident. Such subjectivity would be hostile in every respect to the natural rights of the infant, and consequently cannot, with any show of reason, be introduced into that provision which both necessity and law establish for his pro-tection. Nor can it be said that its existence is necessary to give just enforcement to the rights of others. When it happens that both the infant and its custodian have been injured by the co-opera-tive negligence of such custodian and a third party, it seems reason-able, at least in some degree, that the latter should be enabled to say to the custodian, 'You and I, by our common carelessness, have done this wrong, and therefore neither can look to the other for redress'; but when such wrongdoer says to the infant, 'Your guar-dian and I, by our joint misconduct, have brought this loss upon you, consequently you have no right of action against me, but you must look for indemnification to your guardian alone,' a proposition is stated that appears to be without any basis either in good sense or law. The conversion of the infant, who is entirely free from fault, into a wrongdoer, by imputation, is logical contrivance uncon-genial with the spirit of jurisprudence. The sensible and legal doctrine is this : an infant of tender years cannot be charged with negligence ; nor can he be so charged with the commission of such fault by substitution, for he is incapable of appointing an agent, the consequence being that he can in no case be considered to be the blamable cause, either in whole or in part, of his own injury."

It has never been held in this state that the negligence of one person is imputable to another, unless the former was the servant or agent of the latter. *Noyes* v. *Boscawen*, 64 N. H. 361. Ap-parently the doctrine of *Hartfield* v. *Roper* was based upon the assumption that the custodian of the infant was his agent. Such an assumption is clearly erroneous, for no such agency can exist in fact. All the elements of agency are wanting. The infant neither appoints his custodian nor has power or capacity to remove him. Such a " custodian is the agent, not of the infant, but of the law. If such supposed agency existed, it would embrace many interests

of the infant, and could not be confined to the single instance where an injury is inflicted by the co-operative tort of the guardian. And yet it seems certain that such custodian cannot surrender or impair a single right of any kind that is vested in the child, nor impose any legal burthen upon it. If a mother, traveling with her child in her arms, should agree with a railway company that, in case of an accident to such infant by reason of the joint negligence of herself and the company, the latter should not be liable to a suit by the child, such an engagement would be plainly invalid on two grounds,— first, the contract would be *contra bonos mores*, and, second, because the mother was not the agent of the child authorized to enter into the agreement. Nevertheless, the position has been deemed defensible that the same evil consequences to the infant will follow from the negligence of the mother, in the absence of such supposed contract, as would have resulted if such contract should have been made and should have been held valid." *Newman* v. *Railroad*, 52 N. J. Law 446, 448.

The reasons which prevent an adult from a recovery for injuries which his negligence contributed to produce are (1) " The mutuality of the wrong, entitling each party alike, where both are injured, to his action against the other, if it entitles either; (2) the impolicy of allowing a party to recover for *his own* wrong; and (3) the policy of making the personal interests of parties dependent upon their own prudence and care. All these are wanting in the case of the infant plaintiff." *Bellefontaine etc. R. R.* v. *Snyder*, 18 Ohio St. 399, 409. If negligence of a parent can be imputed to prevent a child's recovery for its injury, it follows that it can also be imputed to render the child liable in damages; but such is not the law. " It is difficult to perceive what principle of public policy is to be subserved, or how it can be reconciled with justice to the infant, to make his personal rights dependent upon the good or bad conduct of others." *Bellefontaine etc. R. R.* v. *Snyder, supra*, 409.

The doctrine of *Hartfield* v. *Roper* imposes burdens and hardships upon the helpless infant that are manifestly unjust. It is opposed by the great weight of modern authorities, and by sound judicial reason. *Pratt Coal & Iron Co.* v. *Brawley*, 83 Ala. 371, 374; *Railway Co.* v. *Rexroad*, 59 Ark. 180, 185; *Daley* v. *Railroad*, 26 Conn. 591, 598; *Moore* v. *Railroad*, 2 Mackey 437, 449; *Chicago etc. Co.* v. *Wilcox*, 138 Ill. 370, 373; *Evansville* v. *Senhenn*, 151 Ind. 42; *Wymore* v. *County*, 78 Ia. 396, 397; *Missouri etc. R'y* v. *Shockman*, 59 Kan. 774; *South Covington etc. R'y* v. *Herrklotz*, 47 S. W. Rep. 265 (Ky. 1898) ; *Westerfield* v. *Levis*, 43 La. 63; *Shippy* v. *Au Sable*, 85 Mich. 280, 292; *Westbrook* v. *Railroad*, 66 Miss. 560, 568; *Winters* v. *Railway*, 99 Mo. 509, 519;

*Huff* v. *Ames*, 16 Neb. 139, 142 ; *Bottoms* v. *Railroad*, 114 N. C. 699, 706 ; *Erie etc. R'y* v. *Schuster*, 113 Pa. St. 412, 416 ; *Whirley* v. *Whiteman*, 1 Head 610, 619 ; *Norfolk etc. R. R.* v. *Ormsby*, 27 Grat. 455, 476 ; *Roth* v. *Company*, 13 Wash. 525, 545 ; *Dicken* v. *Company*, 41 W. Va. 511. It is not in harmony with the principles of the law of this state, and is not adopted as a part of its. jurisprudence.

"Actions of tort for physical injuries to the person . . . and the causes of such actions shall survive to the extent and subject to the limitations set forth in the five following sections, and not otherwise." P. S., c. 191, s. 8.

"In such case, the damages recovered, less the expenses of recovery, shall belong and be distributed as follows:

"I.    To the widow or widower of the deceased one half thereof, and to the children of the deceased the other half in equal shares.

"II.    If there be no child, to the widow or widower the whole thereof.

"III.    If there be no child and no widow or widower, to the heirs-at-law of the deceased according to the laws of distribution." *Ib.*, s. 13.

"IV.    If there be a child or children and no widow or widower, to the children of the deceased in equal shares the whole thereof." Laws 1893, c. 67, s. 5.

This. action, brought by the administrator of the child's estate, is for the benefit of the estate and not, as the defendants claim, for the benefit of the father. The fact that the father will be indirectly benefited is only an incident of the suit. Had the child survived, the action would have been brought in its own name. The father's cause of action would have been what it is now, —case for the loss of the child's service. The child's cause of action survived by reason of the statute, and the money recovered in it will be assets in the hands of its administrator, to be distributed in accordance with the special provisions of the statute. If the father's negligence barred his right to recover in this action, there would seem to be no reason why it would not bar him from recovering any property of the child which he might inherit under the general provisions relating to descent and distribution; but this is not claimed to be and is not the law. The evidence of the father's negligence was properly excluded, and the request for instructions upon this point was properly denied.

The second and third requests were also properly denied. Even if the motor-man was acting under excitement when the accident occurred, and because thereof erred in judgment in his efforts to stop the car, it does not follow that he was in the exercise of ordinary care. It was for the jury to say whether "a person of aver-

age prudence," situated as the motor-man was, "possessed of the same knowledge and means of knowledge that he had of the surrounding circumstances," including his excitement, the "impending danger, and means of avoiding it, would or might have done as he did." *Folsom* v. *Railroad,* 68 N. H. 454, 460. The motor-man's excitement was only one of several circumstances from which the question of his negligence was to be determined.

The defendants' duty to equip their car with safety appliances was not limited by their convenience, but included the adoption of such appliances as men of average prudence would use under the same circumstances. In any event, as the plaintiff says, "the defendants were not harmed by the court's refusal to charge in accordance with the fourth request. Assume that the jury found that the fender described in the request probably would not have saved the child; that necessarily involved a finding that the absence of it probably did not kill him or contribute to his injury. Hence the jury could not have placed its verdict upon the ground of this default, having been instructed that the defendants' negligence in any particular must contribute to the injury to warrant a recovery."

The court, having instructed the jury correctly, was not bound to give the special instructions asked for by the defendants. "It must necessarily be left to the presiding justice to decide how far it would be useful to accompany a statement of legal propositions with observations upon the facts of the case." *Davis* v. *Railroad,* 68 N. H. 247, 252.

The refusal of the court to qualify his instructions when the qualification was contained in another part of the charge raises no question of law. Such refusal was within the discretion of the presiding judge. *Davis* v. *Railroad, supra.*

*Exceptions overruled.*

YOUNG, J., did not sit: the others concurred.