# CENTRAL RAILROAD AND BANKING COMPANY
## v. WRIGHT.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF GEORGIA.

No. 300. Argued October 22, 1896. — Decided November 30, 1896.

Section eighteen of the act of the legislature of Georgia of December 14, 1835, providing that no municipal or other corporation shall have power to tax the stock of the Central Railroad and Banking Company of Georgia, but may tax any property, real or personal, of said company within the jurisdiction of said corporation in the ratio of taxation of like property, when construed in connection with other legislation on that subject, permits municipal corporations to tax such property within their respective jurisdictions in the ratio of taxation of like property.

While, in the absence of any words showing a different intent, an exemption of the stock or capital stock of a corporation may imply, and carry with it, an exemption of the property in which such stock is invested, yet, if the legislature uses language at variance with such intention, the courts,

which will never presume a purpose to exempt any property from its just share of the public burdens, will construe any doubts which may arise as to the proper interpretation of the charter against the exemption.

THIS was an intervening petition filed by William A. Wright, Comptroller General of the State of Georgia, praying that the receivers of the Central Railroad and Banking Company, appointed in a suit for the foreclosure of a mortgage to the Farmers' Loan and Trust Company, be required to pay him certain taxes said to be due by the corporation for the year 1891, upon its property in different counties and cities upon the line of its road in the State of Georgia, which taxes were claimed to be a lien upon the property of the road.

The taxes were assessed in pursuance of certain acts of the General Assembly, passed in 1889 and 1890, authorizing counties and cities to tax railroad property. The taxes were levied upon the *railroad and appurtenances* of that portion of the Central Railroad between Savannah and Macon, and included no other property of the company. The defendants claim the taxes to be invalid; upon the ground that the railroad and its appurtenances over that part of the line from Savannah to Macon were subject only to a taxation of one half of one per cent upon the net annual income of the road, and that the acts of 1889 and 1890, in so far as they authorized the taxation of its property by counties and other municipalities, impaired the obligation of the original contract of the State contained in its charter, and were, therefore, void.

The Circuit Court was of opinion that the taxes were properly levied, and made a decree for their payment by the receivers, and from that decree the corporation and its receivers appealed to this court.

*Mr. A. R. Lawton* for appellants. *Mr. Henry C. Cunningham* and *Mr. Samuel B. Adams* were on his brief.

*Mr. J. M. Terrell* for appellee.

MR. JUSTICE BROWN, after stating the case as above, delivered the opinion of the court.

This case raises the question, frequently presented to this court, of the power of a State to impose upon a corporation a tax not provided for or contemplated, nor yet expressly forbidden, in its original charter.

The defendant corporation was chartered in 1833, Laws of Georgia of 1833, 246, under the name of the Central Railroad and Canal Company, " for the purpose of opening a canal or railroad communication from the city of Savannah to the interior of the State." The seventh section declared that " the said canal or railway, and the appurtenances of the same, shall not be subjected to be taxed higher than an half per cent upon its annual net income." On December 14, 1835, the General Assembly passed an amendatory act, Laws of 1835, 217, under which the road was constructed, changing the name to the Central Railroad and Banking Company, and giving it certain banking powers and privileges. The eighteenth section of this act provided that " the said railroad, and the appurtenances of the same shall not be subjected to be taxed higher than one half of one per centum upon its annual net income, and no municipal or other corporation shall have power to tax the stock of said company, but may tax any property, real or personal, of the said company, within the jurisdiction of said corporation in the ratio of taxation of like property."

No other act affecting the question at issue was passed until 1889, when the General Assembly provided a general system of taxation of railroad property in each of the counties of the State through which the railroads ran, and required the various companies to make annual returns to the Comptroller General, under the oath of the president or chief executive officer, and enacted that they should be subjected to taxation in every county through which their roads might pass. Other sections of the act provided how the amounts should be assessed and paid, and the manner of issuing execution in the event they were not paid.

By another act, approved December 24, 1890, railroad companies were subjected to taxation upon their property located in the different towns and cities of the State.

By reason of the fact that all of the property and effects of

the Central Railroad and Banking Company were in the hands of receivers, appointed by the Circuit Court of the United States, under certain bills filed to foreclose a mortgage to the Farmers' Loan and Trust Company, the Comptroller General was unable to collect such taxes by the ordinary process of levy and sale, and therefore filed his petition against such receivers, praying that they might be required to pay him the taxes. Under the acts of 1889 and 1890 the corporation made the returns required, and paid such taxes as were assessed upon those parts of its property which were admitted to be subject to taxation, but contended that, as to its original line between Savannah and Macon, it could not be taxed, either by the State or by its municipalities, at a greater rate than one half of one per cent upon its net annual income.

In section eighteen of the act of 1835, above cited, there is an express prohibition against the municipal taxation of the "stock" of the company, and an express permission to tax any "property" of the company within the jurisdiction of the corporation. The real question is whether these two clauses can be reconciled, and each given its proper effect. The position of the railway company in this connection is that the railroad and its appurtenances may not be taxed either by the State or by municipalities or counties, at a greater rate than one half of one per cent upon its net annual income; that this amount having been paid, the power to tax the railroad and its appurtenances has been exhausted; that the permission given the municipalities to tax the property of the company applies only to such property as is not included in the term "railroad and appurtenances," and must have been intended to include such property as the corporation, by virtue of its banking powers, could purchase or might receive in satisfaction of debts. It is further contended that the prohibition of the taxation of the stock applies equally to the property represented by the stock.

In support of this contention we are cited to certain decisions holding that a tax upon the "property" of a railway company is within the prohibition of a tax upon the "stock" of the company; in other words, that a tax upon the property

is a tax upon the stock. In examining these cases, however, it will be found that the words "stock" or "capital stock" were used in the sense of the capital, the plant, or the property of the company, and not, as in this statute, in the sense of stock or shares of stock, as distinguished from the property of the company. Thus in *Rome Railroad* v. *The Mayor &c.*, 14 Georgia, 275, there was an attempt made to levy a tax upon the property of the Rome Railroad Company within the corporate limits of the city of Rome. There was a provision in the charter that the "stock" of the company should "not be liable to any tax, duty or imposition whatever, unless such, and no more, as is now in the banks of this State." The tax was held to be invalid. As it appeared in this case that a certain part of the stock of the company, which was on deposit in the bank, was expressly permitted to be taxed, it was apparent that the word "stock" was used in the sense of property, and that the money of the company on deposit in the banks was intended to be distinguished from its other property.

So, also in *State* v. *Hood*, 15 Rich. (Law) 177, a charter of a railroad company exempting the "stock" of a railroad company from taxation was held also to exempt its "gross income," as the income was only an accessory of the stock, which was an aggregate of the property and effects of the corporation.

Indeed, the general tenor of the authorities is to the effect that where there is a general exemption of the stock or capital stock of a corporation, without other explanatory words, the exemption applies equally to the property of the corporation represented by its shares of stock. *Gordon* v. *Baltimore*, 5 Gill, 231; *Baltimore* v. *Baltimore & Ohio Railroad*, 6 Gill, 288; *State* v. *Cumberland &c. Railroad*, 40 Maryland, 22; *Connersville* v. *Bank of Indiana*, 16 Indiana, 105; *New Haven* v. *City Bank*, 31 Connecticut, 106; *Hannibal & St. Joseph Railroad* v. *Shacklett*, 30 Missouri, 550. And, in the *Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665, it was held by this court that, in view of the eighteenth section of the act of 1835, the State itself could not tax the property of the Central Railroad and Banking Company between

Savannah and Macon beyond one half of one per cent upon its annual net income, notwithstanding that, in 1872, it had become consolidated with the Macon and Western Railroad Company, whose charter did not possess such immunity from taxation.

The only embarrassment in the case arises from a decision of the Supreme Court of Georgia in the case of the *Ordinary of Bibb County* v. *Central Railroad & Banking Co.*, 40 Georgia, 646. It appeared in this case that the ordinary of Bibb County endeavored to levy a tax upon the property of railroad companies having their *termini* in Macon, and it was submitted to the judge of the Macon circuit to decide whether, under its charter, the company could be taxed for county purposes, or was liable for any other tax than one half of one per cent upon its annual net income. The judge held that so much of the property, as was necessary and proper for sustaining the railroads, was exempt from the county tax, but that such of its real estate as was not improved and in use was subject to be taxed until it was improved and used for railroad purposes. Both parties appealed to the Supreme Court of the State.

The head-note of the case in that court indicates the ruling of the court to have been that all the property of the company that was necessary and proper for laying, building and sustaining the railroad constituted a part of its capital stock, and was not liable to be taxed in any other manner than was specified in its charter; but that any other property owned by the company, which was not necessary for that purpose, might be taxed by the county or other corporation in the ratio of taxation of like property. The statement of the head-note, however, is not borne out by an examination of the opinions. The court, which then consisted of three members, was unanimous in reversing the judgment of the court below, but each gave a different reason for his opinion. Mr. Justice Warner, who delivered the first opinion, held that the stock of the company consisted of its capital invested in such property as was necessary and proper for conducting its business, and was not liable to be taxed in any other manner than was specified in the charter, either by the State or by the county corporation; but

that any other property owned by it which was not necessary and proper for railroad purposes, might be taxed in the ratio of taxation of like property. Mr. Justice McCay concurred upon the ground that under the laws of Georgia, as they then existed, no county tax could be collected upon any property not taxed by the State; that although the State had expressly reserved the right to authorize municipal and other corporations to tax for local purposes the property of the company, it had not by any law been as yet conferred on the counties. Chief Justice Brown, on the other hand, held that although the State had relinquished her right of taxation beyond a percentage upon the income, the company had expressly agreed that a municipal or other corporation might tax any property of the company within its jurisdiction; that such property was not limited to such as the company might have purchased in payment of debts, and the like, which was not appurtenant to the road, but that the municipal corporation, through which the road ran, might tax any of its property, real or personal, in the ratio of taxation imposed on any other like property. But, he was further of opinion, that that power had not been exercised as to any part of the property of the company not subject to a state tax; that the county was only authorized to levy a percentage on the state tax, and that as the State was not authorized to levy a tax upon the road and its appurtenances, and none such had been levied, there was no state tax upon which the county could assess a percentage.

If the opinion of Mr. Justice Warner had been the opinion of the court, it would have been difficult to avoid the conclusion that this was a construction of the charter which would have been binding upon the Federal court, as it held, in effect, that the law taxing the property of the railroad impaired the obligation of the contract contained in the charter. But his opinion was not the opinion of the court, but of only one of its three members. The opinion of the court was, simply, that the action of the court below should be reversed for reasons in which no two of its members concurred.

As our attention has not been called to any later case in

the Supreme Court of the State of Georgia which gives a different construction to the charter of this road, we consider ourselves at liberty to deal with the question presented in this case as an original one to which the Supreme Court of the State has not given an answer.

In this aspect, we can have no doubt whatever of the power of municipalities to do exactly what the charter authorized them to do, namely, to tax any property, real or personal, of the company within the jurisdiction of the corporation in the ratio of taxation of like property. While, as above stated, the word "stock" has sometimes been held to include the property of the corporation represented by its stock, this is true only when the context does not require a different construction. The distinction was clearly stated by Chief Justice Waite in *Railroad Companies* v. *Gaines*, 97 U. S. 697, in which the charter of a railroad company provided that "the capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, machinery and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road and no longer." It was insisted by the road that the term "capital stock" must be held to signify the property purchased therewith and represented thereby, and that it necessarily followed that the perpetual exemption of the stock from taxation extended to such property, and that full effect might be given to the charter by exempting for a limited period such property as was purchased or constructed with money, not constituting a part of the fund subscribed by the corporators, but borrowed pursuant to the power which the charter conferred upon the company. In delivering the opinion of the court, Mr. Chief Justice Waite said that there were undoubtedly many cases to be found in this and other courts where it had been held that an exemption of the capital stock from taxation was equivalent to an exemption of the property into which the capital had been converted. But in all these cases the question had turned upon the effect to be given to the term "capital" or "capital stock," as used in the par-

ticular charter under consideration, and that when the property had been exempted by reason of the exemption of the capital, it had been because, taking the whole charter together, it was apparent that the legislature so intended. "Thus the capital stock of a bank usually consists of money paid in to be used in banking, and an exemption of such capital stock from taxation must almost necessarily mean an exemption of the securities into which the money had been converted in the regular course of a banking business. And, in general, an exemption of capital stock, without more, may, with great propriety, be considered, under ordinary circumstances, as exempting that which, in the legitimate operations of the corporation, comes to represent the capital." It was held, however, that in that particular case it could not have been understood that the property was to represent the capital for the purposes of taxation, and that such property was taxable under the original charter at the expiration of twenty years from the completion of the road.

The same construction was given to a similar provision of the charter of the Cairo and Fulton Railroad Company in *Railroad Company* v. *Loftin*, 98 U. S. 559. So in *Bank* v. *Tennessee*, 104 U. S. 493, where a bank was required to "pay to the State an annual tax of one half of one per cent upon each share of capital stock, in lieu of all other taxes," and was also allowed to "purchase and hold a lot of ground" for its place of business, and hold such real property as might be conveyed to it to secure its debts, it was held that the immunity from taxation extended only to so much of the building as was required by the actual wants of the bank to carry on its business. See, also, *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365, and *Tennessee* v. *Whitworth*, 117 U. S. 129.

From a review of these cases, it is evident that while in the absence of any words showing a different intent, an exemption of the stock or capital stock of a corporation may imply, and carry with it, an exemption of the property in which such stock is invested, yet, if the legislature uses language at variance with such intention, the courts, which will never presume a purpose to exempt any property from its just share of

the public burdens, will construe any doubts which may arise as to the proper interpretation of the charter against the exemption.

In the eighteenth section of the charter under consideration there are three clauses which cover the question of taxation. First, the railroad and its appurtenances shall not be subject to be taxed higher than one half of one per centum upon its annual net income; second, no municipal or other corporation shall have the power to tax the stock of said corporation; third, but such municipal or other corporation may tax any property, real or personal, of the said company within the jurisdiction of said corporation in the ratio of taxation of like property. The first clause was obviously intended as a limit upon state taxation; the second, as a prohibition upon the powers of municipalities to tax the shares of stock held by its citizens; the third, as an express permission to tax any property of the company within its jurisdiction for local purposes. If, as insisted by the defendants, this permission were limited to the taxation of property, belonging to the company, other than the railroad and its appurtenances, the clause would be meaningless, since the first clause, limiting taxation to a percentage upon the income, applies only to the railroad and its appurtenances, and leaves to the State itself, as well as to its municipalities, the power to tax property received by the corporation in satisfaction of debts, or otherwise, for purposes disconnected with the business operations of the railroad. Full effect can be given to these three clauses only by sustaining the right of the municipalities to tax any property of the company within their jurisdiction. Indeed, the argument made here was the very one made in connection with the somewhat similar clause in *Railroad Companies* v. *Gaines*, 97 U. S. 697, and held to be unsound.

In the State of Georgia there seems to have been, prior to the act of 1889, some efforts made to subject the property of this road to municipal taxation, which were ineffectual by reason of the legislature failing to provide the proper machinery for the assessment and collection of such taxes; and, as late as 1883, it was held that its system of taxation virtually

excluded counties and municipal corporations from levying a tax upon it for county or municipal purposes by making no provision for the assessment and collection of such taxes. *Houston County* v. *Central Railroad &c. Co.*, 72 Georgia, 211. This defect seems to have been supplied by the acts of 1889 and 1890, and we see no reason why the system of taxation provided by these acts is not valid and consistent with the charter.

We regard it as quite immaterial that when the act of 1835 was passed, a county was not a municipal corporation, or indeed a corporation at all. The power given by the eighteenth section not only extends to municipal but to other corporations, by which was evidently intended other corporations with power to tax for local purposes. If, for instance, cities were reorganized under the names of boroughs or taxing districts, the power of taxation, so far as this section is concerned, would pass to the same corporation under its new name, if the legislature so directed; and the fact that no corporations existed in 1835 under the names of boroughs or taxing districts, would not affect the question. The essential thing reserved was the power to tax for local purposes by whatever corporation then existed, or should thereafter be called into being, for municipal purposes. The legislature could not then foresee what corporations might thereafter be established for municipal purposes, and it would be frittering away its whole object to limit it to corporations then existing.

The decree of the court below was clearly right, and it is, therefore,

*Affirmed.*