BRUNSWICK TERMINAL CO. et al. v. NATIONAL BANK OF BALTI-. MORE.

(Circuit Court, D. Maryland. December 18, 1901.)

1. CORPORATIONS—LIABILITY OF STOCKHOLDERS—GEORGIA STATUTE.

The charter of a state bank in Georgia provided that, in addition to the liability of the bank, the stockholders should be individually liable as sureties to its creditors "to the extent of the amount of their stock therein, at the par value thereof, respectively, at the time the debt was created." A statute of the state (Code 1882, § 1496) provided that "when a stockholder in any bank or other corporation is individually liable under its charter and shall transfer his stock he shall be exempt from such liability unless he receives a written notice from a creditor within six months after such transfer of his intenti n to hold him liable, provided he shall give notice once a month, for six months, of such transfer immediately thereafter," etc. *Held*, that one who for a short time held stock of such bank as collateral security, during which time it stood in his name, and was then transferred back to the owner, was not liable for debts of the bank subsequently contracted, without any reference to his holding of the stock, although no notice of the retransfer of the stock was published, but that the statute was intended only to enable stockholders who had become liable for existing debts to terminate such liability by giving the prescribed notice, and did not apply to a case where the stockholder was never in fact liable under the terms of the charter, because he did not hold the stock "at the time the debt was created."

2. FEDERAL COURTS—CONSTRUCTION OF STATE STATUTES—FOLLOWING STATE DECISIONS.

A federal court is not bound to follow the decision of the supreme court of a state construing a state statute relating to the liability of stockholders, where the transaction before it, upon which liability is asserted, occurred prior to such construction, and especially where the correctness of the decision was subsequently doubted by the court which made it, and followed by a divided court only on the principle of stare decisis.[1]

In Equity. On final hearing.

Williams, Thomas & Williams, for complainants.

Allen McLane, for defendant.

MORRIS, District Judge. This is a bill filed January 14, 1898, by the Brunswick Terminal Company and others, creditors of the Brunswick State Bank, a corporation chartered by the state of Georgia, which failed and was declared insolvent in May, 1893. The object of the bill is to enforce in behalf of the creditors of said Brunswick State Bank against the National Bank of Baltimore, an alleged stockholder, a statutory liability equal to the par value of the stock in the Brunswick State Bank at one time standing in the name of said National Bank of Baltimore. This case was heard before on a demurrer to the defendant's answer setting up the plea of limitations under the Maryland statute. This court overruled the demurrer, and on the plaintiffs' appeal to the circuit court of appeals for the Fourth circuit that decision was reversed, and it was held that

[1] State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

the Georgia statute by which suits to enforce rights accruing under acts of incorporation may be brought within 20 years was applicable, and that the Maryland statute was not to be applied. Brunswick Terminal Co. v. National Bank of Baltimore, 40 C. C. A. 22, 99 Fed. 635, 48 L. R. A. 625. The case now comes on to be heard upon the merits. The agreed statement of facts contains the following:

"That in the month of August, 1890, the defendant discounted for one Lloyd a promissory note drawn by him and F. E. Cunningham for the sum of $10,000, indorsed by the copartnership firm of Lloyd & Adams, and received, together with the note, as the collateral security for its payment, 110 shares of the capital stock of said Brunswick State Bank, of the par value of $100 per share; that in order to protect itself as pledgee the defendant caused this stock to be transferred into its own name on the books of the Brunswick State Bank on or about the 25th day of August, 1890; that the said note was paid to the defendant at the time of its maturity, and the defendant, being under obligation to return the stock, the pledge being at end, and the pledgor entitled to its return, retransferred the stock on the books of said Brunswick State Bank by direction of the pledgor, and said transfer was fully completed on the books of the said bank on or before the 20th day of October, 1890, but no notice by publication of the fact of said retransfer was given by the defendant; that the defendant never had or claimed any interest in said stock save under the pledge aforesaid, but never notified the Brunswick State Bank, its stockholders or creditors, that it held said stock otherwise than as the absolute owner thereof; that the indebtedness of said Brunswick Bank to all of the plaintiffs in this cause accrued after the said 20th day of October, 1890, from transactions with said bank commenced after that date, and the plaintiffs had no knowledge in fact that the name of the defendant had appeared upon the books of said Brunswick State Bank as a stockholder."

The liability of stockholders of the Brunswick State Bank to the creditors thereof is created by section 9 of its charter, found in the Laws of Georgia of 1889 (page 522), which is as follows:

"Sec. 9. Be it and it is hereby enacted that said corporation shall be responsible to its creditors to the extent of its property and assets; and the stockholders in addition thereto, shall be individually liable, equally and ratably, and not one for another, as sureties to the creditors of such corporation for all contracts and debts of said corporation, to the extent of the amount of their stock therein, at the par value thereof, respectively, at the time the debt was created, in addition to the amount invested in such shares."

By this provision the stockholder is made liable only to the extent of his stock at the time the debt was created. It is admitted that the defendant acquired the stock as pledgee on August 25, 1890, and retransferred it on October 20, 1890, and it is admitted that all the transactions with the Brunswick State Bank from which the debts of the plaintiffs arose commenced after the date when the defendant had retransferred the stock on the books of the bank. If we look solely to the wording of section 9, it would seem plain, and not to be disputed, that at the time the debts were created the defendant had no stock in the Brunswick State Bank, and it was under no liability whatever. But the plaintiffs invoke section 1496 of the Georgia Code of 1882, which is as follows:

"When a stockholder in any bank or any other corporation is individually liable under the charter and shall transfer his stock he shall be exempt from such liability unless he receives a written notice from a creditor within six months after such transfer of his intention to hold him liable, provided

he shall give notice once a month, for six months, of such transfer immediately thereafter in two newspapers in and nearest the place where such institution shall keep its principal office."

As by the charter of the Brunswick State Bank a stockholder was only liable as surety to creditors to the extent of his stock in the bank at the time the debt was created, and as the defendant at the time the debts of the plaintiffs were created had no stock in the bank, and was therefore under no liability, it does not appear that section 1496 of the Georgia Code could have any application to this defendant. This section is applicable to a stockholder who, being individually liable to a creditor or creditors, shall then transfer his stock. The stockholders in the Brunswick State Bank were only liable for debts created while they held their stock, and, as applied to them, this section means that a stockholder who has become individually liable to a creditor by holding stock at the time the creditor's debts were created shall be, exempt from such liability, provided he publishes a notice that he has transferred his stock, unless within six months after the transfer the creditor gives him notice that he intends to hold him liable. This would seem to be the plain meaning and intention of the statute.

As section 1496 enables a stockholder who, by the charter, is already under liability to a creditor, to escape that liability by transferring his stock, unless the creditor gives him notice within six months after the transfer, it is sensible and understandable why notice of the transfer should be given; but, as to persons who as yet had no dealings with the bank out of which debts could be created, to require notice to them would not be sensible, and would be a mere arbitrary penalty, without reason,—a thing which is not to be imputed to the legislature if the section is capable of a more reasonable interpretation. If no notice of transfer by advertisement is given by the stockholder, then no notice within six months need be given by the creditor, and both stand upon the rights given by the charter, unaffected by section 1496 of the Code.

Against this construction the complainants urge a ruling by the supreme court of Georgia in the case of Brobston v. Downing (1894) 95 Ga. 505, 22 S. E. 277. This was a proceeding similar to the present one, to hold stockholders of the insolvent Brunswick State Bank, resident in Georgia, liable to creditors. The supreme court of Georgia filed no opinion, but by a headnote memorandum ruled (one of the three judges doubting) that the liability of a stockholder continued for any debt contracted by the corporation at any time, both before as well as after he had transferred his stock, unless he had given the notice of the transfer conformably to section 1496 of the Code. This ruling was made four years after the defendant in this case had retransferred the stock held by it in pledge from August 25 to October 20, 1890. The same questions, growing out of the liability of the stockholders of the Brunswick State Bank, came before the supreme court of Georgia again in Bank v. Brobston (1895) 99 Ga. 801, 27 S. E. 790. In that case two of the judges considered themselves bound by the previous ruling in 95 Ga. and 22 S. E., and the third judge recorded his dissent. The court recites that section

1496 of the Code had been repealed, and that the legislature had in 1894 substituted a provision that the individual liability of a stockholder should cease upon transfer of his stock, unless the corporation should fail within six months after the transfer, and that in view of this change in the law differences of opinion between the judges were not important, except as affecting the particular litigation before it. The court says (page 804, 99 Ga., page 791, 27 S. E.):

"If another case should arise the decision of which would depend upon the question as to which we disagree, the whole matter would still be open to review by a bench of six justices. Accordingly, we have agreed among ourselves to let the present decision stand upon the headnotes as announced, with the foregoing explanation of our reasons for not entering upon a discussion as to what should be the proper construction of the bank charter now under consideration."

The present defendant was not a party to either of the above-mentioned cases; never was within the jurisdiction of the courts of Georgia; never was a real, but only a nominal, shareholder for three months in 1890; and, in view of this explanation by the supreme court of Georgia, it would seem that the question of the liability of the defendant in the case now being considered may be fairly treated as still open for independent consideration and examination. Banking Co. v. Wright, 164 U. S. 327–332, 17 Sup. Ct. 80, 41 L. Ed. 454. Section 9 of the charter of the Brunswick State Bank, creating the individual liability of stockholders, is in substantially the same words as are used in many statutes, in many different states, and its meaning may be said to be fixed by common consensus; and although the highest court of a state may give it a different and peculiar construction, which will be binding upon those whose liability is afterwards incurred, it would seem but just, as to those who have made a bona fide transfer of their stock before a different interpretation was announced, that their liability should be governed by the generally accepted meaning.

Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517, was a case with regard to the validity of certain county bonds, which the constitution and laws of Mississippi provided should not be valid unless two-thirds of the qualified voters of the county at an election should assent thereto. The supreme court of Mississippi construed the words of the constitution and the laws requiring the assent of two-thirds of the qualified voters to mean two-thirds of the whole number qualified to vote, and not merely two-thirds of such number as should actually vote at the election, and the supreme court of Mississippi for that reason declared the bonds invalid. The supreme court of the United States, finding that the bona fide holder of the same issue of bonds in the case brought before it was not a party to the case in the state court, and that the rule of construction announced in that case had not been previously established so as to have become recognized as the settled law of the state, did not feel constrained to adopt the conclusions of the supreme court of Mississippi, for the reason that the generally accepted meaning of similarly worded provisions had been that what was meant was two-thirds of the persons who actually cast their votes. Folsom v. Township

Ninety-Six, 159 U. S. 625–627, 16 Sup. Ct. 174, 40 L. Ed. 278; Pine Grove Tp. v. Talcott, 19 Wall. 666, 22 L. Ed. 227; Burgess v. Seligman, 107 U. S. 20–33, 2 Sup. Ct. 10, 27 L. Ed. 359; Town of Pana v. Bowler, 107 U. S. 529–540, 2 Sup. Ct. 704, 27 L. Ed. 424; Thompson v. Perrine, 103 U. S. 817, 26 L. Ed. 612; Butz v. City of Muscatine, 8 Wall. 583, 19 L. Ed. 490; Pease v. Peck, 18 How. 598, 15 L. Ed. 518.

The case now in hand I take to be one in which for similar reasons I am not bound to follow the Georgia decision. It surely was not to be supposed by any one who examined the charter of the Brunswick State Bank and section 1496 of the Code of Georgia that it was intended to inflict a mere penalty upon those who might from time to time hold its stock by arbitrarily making them liable for all transactions during 20 years after they had ceased to be stockholders.

As is said in Williams v. Hanna, 40 Ind. 544, quoted in Thomp. Liab. Stockh. § 95:

"The creditor, if he looks to the individual liability of stockholders at all, looks to those who are stockholders at the time he lends his credit and to those he should be content to look for the collection of his debt."

See, also, 1 Cook, Stock. & S. § 259; Matthews v. Albert, 24 Md. 527–539.

As the defendant did not appear on the stock registry as one of the stockholders of the Brunswick State Bank at the time the complainants gave it credit, no credit could have been given on account of any supposed liability of the defendant as a stockholder. The unexpected interpretation of the Georgia statute made in 1894, imposing a liability on the defendant growing out of a transfer of stock closed in 1890, in favor of creditors whose debts accrued, as stated in the bill of complaint, during the years 1892 and 1893, has all the elements of injustice which attach to ex post facto and retroactive laws. I hold that the defendant is not liable, for the reason that the defendant had no stock at the time when the debts of the complainants were created.

It is also urged that, as the defendant is a national bank, it had no power under its charter to invest its money in the shares of a corporation. Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198; Bank v. Hawkins, 174 U. S. 362, 19 Sup. Ct. 739, 43 L. Ed. 1007. And that the creditors of the Brunswick State Bank, from the fact of this want of corporate power, were affected with notice that the shares standing in the name of the National Bank of Baltimore were not its absolute property, but held as a collateral security, the pledgor being the real owner, and that, therefore, the defendant is not estopped from showing the facts which would have been discovered if inquiry had been made. Robinson v. Bank, 180 U. S. 295–309, 21 Sup. Ct. 383, 45 L. Ed. 536; Baker v. Bank (C. C.) 86 Fed. 1006. I am, however, so well satisfied upon the ground already stated that the defendant is not liable that I do not consider this other ground of defense urged by the defendant.

I will sign a decree dismissing the bill of complaint.