## WILLIAMS *v.* HANNA.

CORPORATION.—*Mining Company.*—*Sale of Stock Free of Incumbrances.*— *Breach of Contract.*—A complaint upon a contract to transfer fifty shares of stock in a mining corporation "so as to vest the clear title in him" (the plaintiff), "and that the same is to be and shall be free and clear of all incumbrances, debts, or liabilities," alleged as a breach, that the corporation, at the time of the contract, was indebted in the sum of ten thousand dollars, and

that subsequent to said contract and transfer of stock, judgment was obtained and the assets of the company sold in satisfaction of only a part of the judgment.

*Held,* that assuming, as most favorable to the plaintiff, that the contract meant that the title to the stock was to be free and clear of all incumbrances or liabilities that could attach to the stock itself, or to the purchaser personally in consequence of becoming the owner thereof and invested with the title thereto, still there was no breach of the contract. A warranty that stock transferred, or the title thereto, is free and clear of all incumbrances, debts, or liabilities, is in no sense a warranty that the corporation itself is free from indebtedness.

SAME.—*Statute.*—*Individual Liability.*—The eleventh section of the act for the incorporation of manufacturing and mining companies (1 G. & H. 425) provides, that "the stockholders of such company shall be individually liable, jointly and severally, for all debts due and owing laborers, servants, and apprentices, for services rendered; and, to other creditors of the company they shall be liable to an amount equal to the stock held by them respectively." The person holding stock at the time a debt is contracted is the person who is liable under the latter clause of this section, to an amount equal to the stock held by him, and a subsequent holder is not liable. There was no averment in the complaint that the indebtedness of the corporation was to the first class of creditors.

*Held,* that the stock and the title thereto were therefore free and clear of incumbrances, according to the terms of the contract.

APPEAL from the Putnam Circuit Court.

WORDEN, J.—This was an action by the appellee against the appellant upon the following instrument:

"This witnesseth that I, Nathan Williams, of the county of Clay, and State of Indiana, in consideration of the sum of twenty-one hundred dollars to me in hand paid, the receipt whereof is hereby acknowledged, by James M. Hanna, of the county of Vigo, and State aforesaid, have this day sold to said Hanna fifty shares of the capital stock of the Indianapolis Coal Company now held by me, being one-half of the whole amount of stock by me held in said company; and in consideration thereof I hereby agree and undertake and bind myself as follows, and my heirs, executors, and assigns, to wit: first, that on or before the first Monday of January next, I am to transfer to said Hanna upon the proper books of said company, the aforesaid amount of said stock so as to vest the clear title in him, and that the same is to be and shall be free and clear of all incumbrances, debts, or

liabilities; second, that after the time limited in the articles of association of said company for the existence and continuation thereof shall have expired, the said James M. Hanna shall, for the consideration aforesaid, and without the payment of any further sum or sums of money, be entitled to and receive one-half of the rights, interests, profits, and benefits which would otherwise accrue to me solely in consequence of the dissolution of said association; third, that until the expiration of the time limited in said articles for the existence of said association, the said Hanna, his heirs or assigns, shall, equally with myself, my heirs, or assigns, have the privilege and right to dig and mine coal, or cause the same to be done, and the same to transport to market from the said acres of land in said articles of association described, to wit, until the same is exhausted, sharing equally the profits, expenses, and losses which may there accrue in working and carrying on said mines and business thereof. For the performance of all which I bind myself, my heirs, executors, and assigns, in the sum of twenty-five hundred dollars, to the said Hanna, his heirs, executors, or assigns, which said sum I hereby agree and bind myself shall be considered and recovered as liquidated damages, upon the non-performance or failure to perform this agreement, or any part thereof; fourth, that after the expiration of the time limited in said articles, the said James M. Hanna shall have the privilege of continuing the business of mining and marketing coal, in company with myself, upon as favorable terms as any other person would undertake the same, and shall have the refusal to so continue said business. In witness whereof, I have hereunto set my hand and seal, this 10th day of December, 1855.

(Signed)        "Nathan $\overset{\text{his}}{+}$ Williams.
$$\text{mark.}$$

"Attest: John W. Jones."

There were five paragraphs in the complaint, all counting upon a breach of that part of the agreement which stipulates for the transfer by Williams to Hanna of the fifty shares of the stock of the coal company. It is not alleged

that the stock was not transferred at the time specified, but the breach alleged is, that the title was not transferred to the plaintiff " free and clear of all incumbrances, debts, and liabilities." The first paragraph alleges, by way of showing a breach of the agreement, that on the 10th of December, 1855, there was a large debt existing and outstanding against said Indianapolis Coal Company, to wit, due to John Woolly & Co., four thousand dollars; to the Bank of the Capital, four thousand dollars; and to the Bank of Hartford County, four thousand dollars; which sums yet remain due and unpaid, being incumbrances and liabilities against said company.

The second paragraph is the same as the first, except that it alleges the indebtedness of the coal company to have been ten thousand dollars, without specifying to whom it was due.

The third paragraph alleges that at the time of the execution of the contract, and continuously thereafter hitherto, the said Indianapolis Coal Company was indebted in the sum of ten thousand dollars, and that because of, and in part satisfaction of, said incumbrances, debts, and liabilities, the property, effects, and assets of the company to a large amount, to wit, the value of eight thousand dollars, were, without the consent of the plaintiff, afterward taken and sold.

The fourth paragraph alleges, in substance, that on the 10th of December, 1855, the Indianapolis Coal Company was indebted in the sum of ten thousand dollars; that afterward, on the 3d of July, 1857, for a part of the same debt, the president of the company drew a bill upon the treasurer thereof in favor of John Burke, and that afterward the Bank of Hartford County became the holder of the bill; and that on, etc., the said bank recovered a judgment thereon against said Indianapolis Coal Company, in the Marion Circuit Court, for the sum of one thousand nine hundred and eighty dollars and sixty-five cents; that on process issued upon said judgment, the effects of said coal company were sold, leaving a part of the debt unpaid; that said judgment and sale of property were in part for the debt and liability which

existed at the time of the execution of the agreement sued
on. A transcript of the judgment and proceedings thereon
is made a part of the paragraph. It is further averred that
on the 3d of January, 1856, the defendant pretended to as-
sign to the plaintiff the fifty shares of stock on the books of
the company, and represented and pretended to him that
the same was free and clear of all debts, incumbrances, and
liabilities, and caused to be issued to the plaintiff certificates
for said stock; that after the proceedings upon, and return
of, the execution, upon which the effects of the corporation
were sold, to wit, on the 20th of December, 1866, the plain-
tiff tendered and offered to return to the defendant the stock,
and proposed to re-transfer the same upon the books of the
company, and still proposes and is willing to do so, and
brings the certificates into court in pursuance of his offer
and tender.

The fifth paragraph alleges the indebtedness of the coal
company, as in the fourth; that on the 15th of May, 1858,
a judgment was recovered by the Bank of Hartford County
against said Indianapolis Coal Company, in the ——— court
of Marion county, for the sum of one thousand nine hun-
dred and eighty dollars and sixty-five cents, being a part of
the debt and liability aforesaid, which judgment remains in
full force and in part unsatisfied; that such proceedings
were had upon said judgment, that afterward all the per-
sonal property and assets of said coal company, of the
value of ten thousand dollars, were taken and sold upon an
execution issued upon said judgment, leaving unpaid more
than a thousand dollars.

Separate demurrers were filed to each paragraph of the
complaint, for want of sufficient facts, but were each over-
ruled, and exception taken.

Such further proceedings were had in the cause as that
final judgment was rendered for the plaintiff below for the
sum of two thousand five hundred dollars, the sum stipu-
lated for as liquidated damages.

Error is assigned, amongst other things, upon the ruling

below in overruling the several demurrers to each paragraph of the complaint, and the question meets us at the threshold of the case, whether the complaint, or any paragraph thereof, states any good cause of action, or, in other words, any breach of the contract sued upon.

The several breaches alleged amount to no more than this, that at the time of the transfer of the stock by the appellant to the appellee, the corporation was indebted, and that on such indebtedness judgment has been since recovered against the corporation and its assets sold upon execution issued upon the judgment, leaving a part of the indebtedness unpaid. Is this a breach of the contract?

We have seen that by the terms of the contract, the stock was to be transferred to the appellee, on the proper books of the company, "so as to vest the clear title in him, * * * free and clear of all incumbrances, debts, or liabilities."

The clause of the contract in question, set out in full, reads as follows: "That on or before the first Monday of January next, I am to transfer to said Hanna, upon the proper books of said company, the aforesaid amount of stock, so as to vest the clear title in him, and that the same is to be and shall be free and clear of all incumbrances, debts, or liabilities."

What is meant by the phrase, "the same is to be and shall be free and clear of all incumbrances, debts, or liabilities?" We suppose it to mean that the title to the stock should thus be free and clear. This is in accordance with the authorities. Says Chancellor KENT: "The relative *same* refers to the next antecedent, though the word *said* does only when the plain meaning of the writing requires it." 2 Kent Com. 555. It is either the stock, or the title thereto, which was thus to vest in the appellee, that was thus to be free and clear of incumbrances, debts, or liabilities. Upon a superficial view, or at the first blush, it might seem to make no difference whether we regard the contract as stipulating that the stock should be free and clear, or that the title thereto, to be

vested in the appellee, should be free and clear of all incumbrances, debts, or liabilities. But there may, perhaps, be a difference. The stock may itself be free and clear of all debts, incumbrances, or liabillities, while the holder of the title thereto might be subjected to liabilities as such holder, which would not attach to the stock.

We may assume, for the purposes of the case (and this construction is most favorable to the appellee), that the contract means that the title to the stock, which was to be vested in the appellee, was to be free and clear of all incumbrances, debts, or liabilities that could attach to the stock itself, or to the appellee personally in consequence of becoming the purchaser thereof and being invested with the title thereto.

We do not decide that the stipulation is broad enough to cover personal liabilities attaching to the appellee in consequence of his purchase of the stock, but that may be conceded for the purposes of the case.

We are of opinion that the contract cannot be construed as an agreement on the part of the appellant, that the corporation itself should be free from incumbrances, debts, or liabilities, unless those incumbrances, debts, or liabilities attached to the stock transferred to the appellee, or to him personally as the holder thereof. To give it such effect would be making a new contract for the parties by construction. They have not, in the contract set out, employed any language that embraces such an idea, nor is there anything in the nature of the transaction that warrants such construction.

These stocks are personal property, and are transferable in such manner as may be prescribed by the by-laws of the corporation. 1 G. & H. 426, sec. 7. Corporation stocks are the subject of daily sale and transfer, and may be worth their par value, or more, though the corporation itself may be largely indebted. A warranty that stock transferred, or the title thereto, is free and clear of all incumbrances, debts, or liabilities, is in no sense a warranty that the corporation itself is free from indebtedness.

Nor are there any extraneous facts or circumstances al-

leged in the complaint, if such existed and could be alleged, that would justify such construction.

Having settled the construction of the contract, so far as it is necessary to do so, we proceed to inquire whether the complaint alleges any breach thereof, as thus construed. There is no complaint that the stock itself was subject to any incumbrances, debts, or liabilities, nor that the appellee did not receive a clear title thereto. But it is claimed that the appellee, by becoming the holder of the stock, became liable for the debts of the corporation to the amount of his stock, and hence that he did not receive the title to his stock free and clear of all debts and liabilities.

This argument is based on the eleventh section of the act for the incorporation of manufacturing and mining companies, etc. (1 G. & H. 425), which provides, that "the stockholders of such company shall be individually liable, jointly and severally, for all debts due and owing laborers, servants and apprentices, for services rendered; and, to other creditors of the company they shall be liable to an amount equal to the stock held by them respectively."

It does not appear that any part of the debts complained of was due, either to laborers, servants or apprentices, for services rendered; hence the branch of the section relating to that subject may be dismissed at once.

But the stockholders are made liable to other creditors, to an amount equal to the stock held by them respectively. The question arises, when must the stockholder have held the stock in order to make him liable? Must he have been a stockholder at the time the debt was contracted? or may he be held liable if a stockholder at the time of suit brought to recover the debt? or is he liable if, between the time of contracting the debt and the bringing of an action against stockholders to recover it, he has purchased and again sold the stock?

We think we may well say, as a step in the solution of these questions, that the legislature evidently intended to make the stockholders, viewed collectively, individually

liable for the debts of the corporation to an amount equal to all the stock issued, and no more. It is clear that that body did not intend to make two or more successive holders of the same stock each liable to the amount thereof. In other words, it was not intended to make a given amount of stock the foundation of a liability greater than the amount of the stock. But if each successive holder of the same stock is to be held liable for the debts of the corporation to an amount equal to the amount of his stock, then the stockholders may, taken as a whole, be liable for a much larger amount than the stock issued. We cannot so construe the statute in question. We must hold that the legislature intended to make those who were stockholders at the time any given debt was contracted, and those only, liable therefor; or we must hold that they intended to make those, and those only, liable who might be stockholders at the time of an action brought against stockholders to recover any given debt of the corporation. One of the points of time must have been intended, when the stock was to be "held" in order to create the liability.

We think the more reasonable interpretation, and that most in harmony with the general spirit and analogies of the law, is to hold that the former period of time was intended. We are of opinion, therefore, that under the statute in question, one who is a stockholder in such a corporation at the time of the contracting of any given debt by the corporation, is liable for that debt to the amount of his stock; but that one who becomes a stockholder subsequent to the contracting of the debt, does not become liable therefor to the amount of his stock, or otherwise, by reason of becoming such stockholder. In short, we think every stockholder in such corporation is individually liable to the amount of his stock for all debts contracted by the corporation during the time he was such stockholder, and none other. This renders the liability of such corporators, to the extent of their stock, similar to that of partners. The out-going partner is not released from his liability by going out of the firm, nor

is the in-coming partner responsible for the debts of the firm contracted before he became a partner.

This view is fully sustained by the authorities. The case of *Moss* v. *Oakley*, 2 Hill N. Y. 265, is exactly in point in principle, though the provision of the statute was different, in this, that it made the stockholders liable for the debts of the corporation, and not merely to an amount equal to their stock. See, also, *Adderly* v. *Storm*, 6 Hill N. Y. 624, and *Rosevelt* v. *Brown*, 11 N. Y. 148, where the prior cases are referred to.

We may add that, independently of any authority, the above, in our opinion, is the true interpretation of the statute in question. The holder of stock in the corporation has a voice in conducting the affairs of the corporation, so far, at least, as the selection of its officers is concerned, and has the means of knowing the situation of its affairs and business, and he should not be permitted to avoid his liability for the debts of the corporation by transferring his stock to another person. On the other hand, the purchaser of stock who has previously had no connection with the corporation, has not the means of knowing very definitely the amount of debts owed by the corporation. He may know the market value of the stock, but this furnishes no very safe criterion by which to determine the amount of indebtedness. The creditor, if he looks to the individual liability of the stockholders at all, looks to those who are stockholders at the time he lends his credit, and to those he should be content to look for the collection of his debt.

Applying these views to the case under consideration, we see that the appellee, Hanna, was subjected to no liability whatever for the previous debts of the corporation by his purchase of the stock; nor did the appellant, Williams, relieve himself of his liability for such previous debts by transferring the stock to Hanna. The appellee, then, received the title to his stock free and clear of all incumbrances, debts, or liabilities, and the matters alleged in the complaint do not constitute a breach of the contract. The demurrers to the

several paragraphs of the complaint should have been sustained.

The judgment below is reversed, and the cause remanded for further proceedings in accordance with this opinion. The appellee having departed this life since the submission of this cause, it is ordered that judgment herein be rendered as of the term at which the cause was submitted.

BUSKIRK, J., having been of counsel in the cause, was absent when it was considered.

*S. Claypool, J. A. Matson,* and *C. C. Matson,* for appellant.
*S. H. Buskirk* and *J. M. Hanna,* for appellee.