[No. 6784. Decided October 11, 1907.]

JOSEPH E. VINNETTE, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*.[1]

DEATH—ACTION BY PARENT—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. The negligence of parents in permitting a child six years of age to cross the tracks of a switch yard in front of their home, frequently used by the railroad company, and leaving her there to play unattended, precludes any recovery for the death of the child, who was run over by a train in switching cars.

Appeal from a judgment of the superior court for King county, Morris, J., entered November 3, 1906, upon the verdict of a jury rendered in favor of the plaintiff, in an action for causing the death of a minor child upon a railroad right of way. Reversed.

*Carrol B. Graves*, for appellant.

*Geo. P. Rossman*, for respondent.

CROW, J.—Action by Joseph E. Vinnette against the Northern Pacific Railway Company to recover damages for the death of plaintiff's child. The plaintiff alleged, that his daughter, six years of age, was struck and killed by a backing train of freight cars while crossing defendant's tracks within the limits of the city of Seattle, upon a platted street and upon a crossing used and traveled by the general public; that a city ordinance then in force prohibited the running of any steam engine and cars in Seattle at a rate of speed exceeding six miles per hour; that the defendant was backing a train

[1]Reported in 91 Pac. 975.

of about sixteen cars at a greater rate of speed; that the defendant had no person on the lookout on the forward end of the train as it was moving backward; that no signal was given by bell, whistle, or otherwise, and that the child, being rightfully upon the alleged street and crossing, was killed by reason of such negligent acts of the defendant. The answer, after admitting the killing of the child, denied other material allegations of the complaint, and affirmatively alleged that the child was a trespasser upon the railway tracks situated in defendant's switching yards, and that her death was occasioned by the negligence of her parents who then and there permitted her to play along and upon the tracks. The reply denied the affirmative allegations of the answer. On trial, the jury returned a general verdict in favor of the plaintiff for $600, and made special findings in answer to interrogatories submitted as follows:

"At what rate of speed was the string of cars moving at the time it struck the child, Catherine Vinnette? Ans. About six miles an hour. At the time mentioned in the complaint and for some time prior thereto, was the switch track lying to the west of the main track at and near the point of the accident, used for the purpose of switching and storing cars? Ans. Yes. Did the man in charge of the string of cars, or either of them, have any knowledge of the child's whereabouts, prior to the collision with her, and did they know of the accident before their attention was called to it after the child had been killed? Ans. No. Who was left in charge of the child and had the custody of the child the morning of the accident and just prior to the accident? Ans. Her mother. If you answer to the last interrogatory that it was the mother of the child, find and state if the mother allowed the child to cross said railway track and enter into play with some other child or children near and in the vicinity of the railway tracks of the defendant and across said tracks from its home? Ans. Yes."

From a judgment entered on the general verdict, the defendant has appealed.

The appellant's assignments of error present the single question of the sufficiency of the evidence to sustain the general verdict and judgment. The evidence shows, that appellant had, when the accident occurred, two lines of railway track, running in a northerly and southerly direction and used exclusively for distributing, moving, and storing freight cars; that all trains enter and leave the city on other lines; that one of the tracks was known as the 'shore line," from which numerous spurs extended to various warehouses and industrial plants; that the other was known as the "long siding," being used for switching and storing cars; that the two tracks, being substantially parallel, were located side by side on a graded strip of land about thirty feet wide between a high bluff or hill to the east, and tide lands to the west; that the soil of the hillside is sustained by bulkheads; that the west line of the grade is sustained by a sea wall; that quite a number of small houses or shacks are located along the tracks, abutting the same on either side, those to the west being over tide lands and supported by piling; that a few feet further west is a public street or boulevard located on an elevated bridge constructed on piling over tide lands and occupied in part by a street car line running into the city of Seattle; that respondent's house is built on piling between the railroad track to the east and the boulevard to the west; that he had access to the boulevard; that, to the east of his house, towards and abutting the railway, he has a small dooryard, floored with boards resting on piles and inclosed with fence and gate.

There was no competent evidence that any street had ever been platted, opened, graded, or maintained in the space occupied by appellant's tracks between the sea wall and hill, nor that such space had ever been traveled by teams or used for general public traffic. There was evidence, however, showing that people living in the small houses and shacks above mentioned frequently crossed and walked along the tracks at various points according to their own convenience. The evi-

dence further shows that, at the time of the accident, a switch-
ing crew was backing about sixteen freight cars on the long
siding; that respondent had left the child in charge of his
wife, its mother, at their home, who permitted her to cross the
tracks to the hill on the opposite side and play with other
children; that after watching the child go across, the mother
went into the kitchen, leaving the door open; that shortly
thereafter the train backed down the long siding, when the
child, returning alone and unattended, stepped on the track
and was killed; that no employee of the appellant saw the
child until after the accident; that no employee was on the
car which struck the child, and that appellant made no claim
to ringing its bell or sounding its whistle, its employees being
engaged in moving freight cars within its switching yards,
and not, according to its contention, upon any public street
or highway. The only substantial conflict in the evidence was
over respondent's contention that a well-defined pathway ex-
isted which was used by the general public and intersected
the tracks immediately in front of his house.

In his brief the respondent continually assumes the exist-
ence of a highway called Ninth street; upon which the rail-
way tracks were located and upon which his house fronted
to the east, but there was no competent evidence showing that
any such street ever existed. Respondent contends that, at
the time the child was killed, she was on Ninth street opposite
his house, on the above-mentioned alleged pathway that had
been used by the public for many years. There was evidence
given by different witnesses to the effect that people, both
adults and children, living in the immediate neighborhood,
had frequently crossed the tracks, but the evidence fails to
show that there was a well-worn track at any particular point,
as seems to be contended by respondent. A number of ex-
cellent photographs were admitted in evidence with the con-
sent of both parties, but while they most clearly and distinctly
show the buildings, railway tracks, abutment, sea wall, piling,

respondent's dooryard, fence, and gate, with other surroundings, it is nevertheless impossible to distinguish upon them the slightest indication of any street or any pathway across or upon the railway tracks at any point near the scene of the accident. The substantial effect of the evidence, as disclosed by these photographs and the oral testimony of the various witnesses, is that the different persons who lived in the neighborhood and who walked back and forth over the tracks did so at such points as were severally convenient to them. But were we to assume that a distinct pathway did exist opposite respondent's house, we could not, for reasons hereinafter mentioned, permit the respondent to recover in this action.

The appellant contends, that the train was not running at an excessive rate of speed; that there was no public street, crossing, or path, at or near the point of the accident; that it was not required to give any signal by bell or whistle; that the child was a trespasser; and that the contributory negligence of the parents bars a recovery by respondent. As we view the evidence, in connection with the special findings, there is no showing of negligence on the part of the appellant sufficient to make it liable for damages. But assuming that such negligence did exist, we are nevertheless compelled to hold that the negligence of the respondent as father of the child, and the mother in whose care she was left, was such that no recovery by respondent can be permitted. The child was of such tender years that no negligence could be imputed to her. She was unable to protect herself or realize the dangers to which she was subjected. Had she been not killed, but permanently injured, and were she now prosecuting an action for damages, the question whether the negligence of her parents could be imputed to her and bar a recovery might possibly arise. Here the father sues for damages resulting from the death of his child, and he will be the sole beneficiary of any judgment recovered.

In *Bellefontaine etc. R. Co. v. Snyder*, 18 Ohio St. 399, an action prosecuted by a minor child, by her next friend, to re-

cover damages sustained by personal injuries to herself, the supreme court of Ohio held that the negligence of a parent or custodian of the child, who was by reason of tender years unable to care for herself, could not be imputed to the child so as to defeat her right to recover damages from a railway company for the injuries caused by its negligent acts. But in *Bellefontaine etc. R. Co. v. Snyder*, 24 Ohio St. 670, when the father of the same child afterwards sued in his individual right for damages to himself arising from the loss of the services of his child in consequence of the same accident, the supreme court of Ohio held that he could not recover, as his right to do so was barred by his own negligence, it having appeared that he intrusted the child to the custody of another who was guilty of negligence contributing to the accident. This distinction between an action for the benefit of the child and for the sole benefit of the negligent parent has been recognized by this and other courts. *Roth v. Union Depot Co.*, 13 Wash. 525, 43 Pac. 641, 31 L. R. A. 855; *Eskildsen v. Seattle*, 29 Wash. 583, 70 Pac. 64; *Pratt Coal & Iron Co. v. Brawley*, 83 Ala. 371, 3 South. 555, 3 Am. St. 751; *Williams v. Texas etc. R. Co.*, 60 Tex. 205; *Bamberger v. Citizens' Street R. Co.*, 95 Tenn. 18, 31 S. W. 163, 49 Am. St. 909, 28 L. R. A. 486.

The unfortunate death of this little girl naturally arouses every feeling of human sympathy, and doubtless appealed to the jury, but the facts are that respondent's wife, with whom he left the child, assented to her going across the tracks unattended, that the mother watched her while leaving, that she was permitted to return alone, and that while doing so she was struck by the train before any of the switching crew saw her or knew of her presence. The acts of the parents constitute the most flagrant negligence upon their part. They must have known that the very existence of the railroad tracks was itself a sign of danger; that an unattended child only six years of age should not have been permitted to play upon or near them, and that if allowed to do so, the child would in all

probability be seriously, injured or killed. Parents cannot delegate to trainmen or other persons in charge of dangerous agencies the care and protection of their unattended children. In the case of *Westerberg v. Kinzua Creek etc. R. Co.*, 142 Pa. St. 471, 21 Atl. 878, 24 Am. St. 510, the supreme court of Pennsylvania said:

"If we concede there was negligence on the part of the company in permitting the car to become detached and run down the road without any one to control it, the fact remains that the children were walking upon the track, and, while they could not be charged with contributory negligence, by reason of their tender years, this suit is brought by their parents, who may be properly so charged. A parent owes a reasonable duty of protection to his children, and cannot cast the whole of that duty upon strangers. If he permits them, when of tender years, to wander off in places of known danger, and by reason thereof an accident occurs to them, he has no just claim to make others bear the consequences of his own neglect. We have a number of cases in which this principle has been enforced. In *Philadelphia etc. R. Co. v. Hummell*, 44 Pa. St. 375, 84 Am. Dec. 457, it was said that children of a tender age cannot be upon a railroad track without a culpable violation of duty by their parents or guardians. In *Philadelphia etc. R. Co. v. Long*, 75 Pa. St. 257, it was said by Agnew, C. J.: 'To suffer a child to wander in the street has the sense of permit. If such permission of sufferance exist, it is negligence.' To the same point is *Cauley v. Pittsburg etc. R. Co.*, 95 Pa. St. 398, 40 Am. Rep. 664; and see, also, *Gillespie v. McGowan*, 100 Pa. St. 144, 45 Am. Rep. 365."

See, also, 1 Thompson, Commentaries on Law of Negligence, § 333; *Evansville etc. R. Co. v. Wolf*, 59 Ind. 89; *Jeffersonville etc. R. Co. v. Bowen*, 40 Ind. 544; *Senn v. Southern R. Co.*, 124 Mo. 621, 28 S. W. 66.

In *Bamberger v. Citizens' St. R. Co.*, *supra*, the action was prosecuted by the father as administrator of his deceased child for the benefit of himself as next of kin, and the supreme court of Tennessee, discussing his contributory negligence, said:

"The underlying principle in the whole matter is, that no one shall profit by his own negligence, and, to allow the

father, who has been guilty of negligence, to recover, notwithstanding that negligence, when he brings the suit as administrator, although he could not do so in his own right, would defeat this underlying principle by a mere change of form, when the entire recovery, in either event, goes to him alone. Upon principle, we think that, no matter how the suit is brought, whether as administrator or as father, it can be defeated by the father's contributory negligence, when he is sole beneficiary."

Assuming that the evidence in this case disclosed facts sufficient to go to the jury upon the question of the appellant's negligence, yet the negligence of the parents of this child was sufficient to demand a judgment for appellant. The house in which respondent lived was located upon and abutted the railroad. The evidence and exhibits show the place of the accident to have been a veritable death-trap for a small child. The mother, as found by the jury, had been left in the custody of the child at the time of the accident. She took the child to the door and permitted her to cross the tracks and play with other small children. The testimony shows that the tracks were frequently used by appellant. The parents should have known that cars might be passing and switching there at any moment. They could not have placed their child in greater peril. The mother's testimony shows that she must have been aware of its dangerous position. No parent should be permitted to recover for his own benefit damages resulting from the death of his child, where he himself has been guilty of negligence which proximately contributed to the accident causing such death.

The honorable trial court erred in refusing to sustain the appellant's motion for judgment notwithstanding the general verdict of the jury. The judgment is reversed, and the cause remanded with instructions to dismiss the action.

FULLERTON, MOUNT, ROOT, and DUNBAR, JJ., concur.