[No. 33449. Department Two. May 10, 1956.]

WESLEY L. KILMER *et al., Respondents,* v. HAROLD C. BEAN *et al., Appellants.*[1]

[1]Reported in 296 P. (2d) 992.

 

 

*Eggerman, Rosling & Williams, Joseph J. Lanza,* and *Ralph H. Higgins,* for appellants.

*Elvidge, Watt, Veblen & Tewell,* for respondents.

ROSELLINI, J.—The respondents' minor daughter, Joan, aged six, was drowned on July 2, 1951, in the waters of Puget Sound near the respondents' home in Des Moines. She was with a party of adults and children who were swimming in the sound at the time of the accident and was in the custody of a neighbor, Mrs. Cooley. This suit was brought to recover damages in the amount of $10,000 for loss of services and $693.15 for funeral and burial expenses. The appellants Hansen are the owners of the property adjacent to the portion of the beach where the drowning was alleged to have occurred, and the appellant Bean is a contractor employed by the Hansens to build a bulkhead on their property.

The complaint alleged that the appellants were negligent in causing an excavation to be made on the beach to obtain materials for a backfill for the bulkhead; and in allowing the hole to remain, knowing that it would constitute a hazard for children who were accustomed to playing on the beach and in the water in front of their properties. According to the complaint, the hole was so situated that while it was visible at low tide, it was invisible when completely covered by the waters of incoming tides. It was alleged that while wading in the water on the beach, the respondents' child had wandered into the hole and was drowned.

The appellant Bean denied any participation in the excavation of the hole, or supervision over it. All of the appellants denied that the existence of the hole was the proximate cause of the accident and affirmatively alleged that the drowning was due to the negligence of the custodian, Mrs. Cooley, in failing to exercise proper care and super-

vision over the child at the time and place of the accident.

The jury returned a verdict against all the appellants in the sum of four thousand dollars, and all of them have appealed. No error has been assigned to any of the instructions. We are asked to determine that, as a matter of law, the evidence was insufficient to establish that (1) the existence of the hole was the proximate cause of the drowning, and (2) the appellant Bean supervised or participated in the excavation of the hole. It is also strongly urged that, under the evidence, the conclusion is inescapable that the custodian, Mrs. Cooley, was guilty of contributory negligence which proximately caused the accident.

Four adjoining beach properties constituted the scene of the swimming party and the accident. The northernmost lot, belonging to the appellants Hansen, is 75 feet in width. Adjoining the Hansen lot on the south is the Miller property, 50 feet in width, and adjoining that is the Shafer property (occupied by the Kilmers at the time of the accident and referred to herein as the Kilmer property), which is 125 feet in width. To the south of the Kilmer property is the Anderson property, also 125 feet in width. Public access to the beach is gained through the lot adjoining the Anderson property on the south.

On the afternoon of the fatal accident, Mrs. Kilmer had left her two young children in charge of Mrs. Cooley while she took her husband to the bus stop and kept an appointment with her doctor. She was gone approximately one hour. During her absence, Mr. and Mrs. Cooley took their children, the Kilmer children, a group of other children, and three adults on a swimming party. They entered the water from the beach in front of the Anderson property. The young children remained close to shore, while the adults proceeded out into the deeper water. Mr. Cooley and one of the older boys, who could swim, went out where the water was warmer and better for swimming, and beyond the place Mrs. Cooley and the other adults were standing waist deep in water. Mrs. Cooley testified that she remained standing at the intermediate point, facing the shore, so that she could watch the children. Members of the party testi-

fied that the tide was coming in at the time, that there was a current to the north which caused them to drift in that direction without being aware of the fact, and that, looking at children against the background of the continuous log bulkheads on the shore, they were unable to detect the northward movement of the entire party, having no "point of reference."

However, Mrs. Cooley did observe that the children were moving to the north, for she called to them to come back several times. Joan, the respondents' child, was wading in the shallow water alongside two small boys in inner tubes, one of whom was Mrs. Cooley's son.

It was not a particularly warm day, and the party did not remain in the water over half an hour at the most, according to the testimony. When Mrs. Cooley came in to the beach to call the children in, her son and another boy told her that "Joanie had ducked under and stayed under a long time." A search was begun at the point where the Cooley boy had been floating in the inner tube when he made the announcement, and the body of Joan was found in the hole which proved to be underneath this spot.

Mrs. Cooley testified that she was aware of the existence of the hole and had been alarmed about it. Other testimony tended to establish that this hole, or depression in the beach, was approximately 50 feet long and from 3 to 3½ feet deep at its deepest parts, and was situated about 93 feet from the bulk head on the Hansen property. It was 175 feet to 200 feet north of the point where the swimming party had entered the water.

As we stated in the recent case of *Mason v. Turner, ante* p. 145, 291 P. (2d) 1023, a verdict cannot be founded on mere theory or speculation. If there is nothing more tangible to proceed upon than two or more conjectural theories, under one or more of which a defendant would be liable, and under one or more of which there would be no liability upon him, a jury will not be permitted to resort to conjecture to determine the facts. However, proof need not be made to an absolute certainty. It is sufficient if the evidence affords room for men of reasonable minds to con-

clude that there is a greater probability that the matter in question happened in such a way as to fix liability upon the person charged therewith than it is that it happened in a way for which the person charged would not be liable.

In this instance, the trial court instructed the jury that no legitimate inference could be drawn that an accident happened in a certain way by showing that it might have happened in that way, without a further showing that it could not reasonably have happened in any other way. This instruction gave the appellants the benefit of a stricter test than that set forth in *Mason v. Turner, supra,* and, as a practical matter, imposed upon the respondents the same burden which is placed on the prosecution in a criminal case, that of proving the facts alleged beyond a reasonable doubt.

The appellants insist that the circumstances surrounding the drowning do not support an inference that it was caused by the existence of the hole.

The boy who last saw Joan alive testified that she was wading in the water about up to her waist, and that the children were not pushing each other when she suddenly ducked under. There were no bruises or scratches on the child's body, an indication that she did not drown in shallow water, as the beach was covered with small barnacled rocks. Since her body was found in the hole close to the point where the boy was floating in the inner tube, the jury could reasonably infer that the child had ducked into this hole, the only hole on that area of the beach, which was otherwise smooth, and that this was the proximate cause of her death.

The appellants' contention that the trial court should have held that, as a matter of law, the custodian of the child was negligent, presents a more difficult question. Ordinarily, the question of contributory negligence is for the jury, and it may be determined as a conclusion of law in only two classes of cases: (1) where the circumstances of the case are such that the standard of duty is fixed and the measure of duty defined by law, and is the same under all circumstances; and (2) where the facts are undisputed

and but one reasonable inference can be drawn from them. *Richardson v. Pacific Power & Light Co.,* 11 Wn. (2d) 288, 118 P. (2d) 985.

There is in this case no legally fixed standard of care; however, the facts concerning the conduct of the custodian, Mrs. Cooley, on the day in question are undisputed. Assuming that the negligence of the custodian will be imputed to the parents and consequently will bar their recovery for loss of services and expenses (and the majority of courts so hold—see 23 A. L. R. 649), can we say as a matter of law that her conduct fell short of the standard required of a reasonably prudent person acting under the same or similar circumstances?

Mrs. Cooley stated in her discovery deposition, which was introduced in evidence because she was unable to attend the trial, that although she was watching the children, she viewed them across a flat surface, against a background of bulkhead on which there was no "point of reference," and since the entire party was drifting northward, without being aware of it, she was deceived as to their actual location. She testified that, had the children been in the shallow water as they appeared to be, close to the bulkhead and south of the Hansen property, they would have been in no danger. She did not see the child duck under and did not know she was missing until she was informed by her son. Were we the triers of the fact, we would be inclined to feel, as the trial court did, that a reasonably prudent parent or custodian would not remove himself so far from the area where the children were playing that he could not detect their actual situation; but we cannot say as a matter of law that this is so. If the children would have been safe if the circumstances had been as they appeared to the custodian to be, and if she was honestly deceived, the jury was entitled to believe her testimony to this effect, and her conduct fell short of negligence.

The appellants rely upon the case of *Vinnette v. Northern Pac. R. Co.,* 47 Wash. 320, 91 Pac. 975, wherein we held that the negligence of a mother in permitting her child to cross a railway track and play in its vicinity precluded her recovery

for the death of the child, who was run over by a train. In that case, the jury had found, in answer to a special interrogatory, that the mother did allow the child to cross the track and play near it; and the evidence showed that she watched the child cross the tracks and permitted her to return alone. In so doing, the child was struck by the train and killed. There is in this case a factual difference, however slight. Here, the custodian testified that she was deceived by appearances and consequently believed the children were in a safe area of the beach. Whether a person exercising reasonable care might be thus deceived, was a question for the jury.

A case more nearly in point is *Corum v. Blomquist,* 116 Wash. 196, 198 Pac. 727, an action for damages for the death by drowning of a minor son in a swimming pool operated by the defendants. It was alleged that the defendants negligently committed the care of the pool to their daughter, a girl lacking in judgment, experience, skill, or ability to safeguard the children who frequented the pool. We held that it was for the jury to determine whether a competent attendant, exercising reasonable care, should have discovered the boy's disappearance before ten or fifteen minutes had elapsed.

Since reasonable men might infer from the evidence in this case that the custodian was not guilty of contributory negligence, the court properly submitted the question to the jury.

The final contention to be considered is that of the appellant Bean, who argues that, under the evidence, he should not be held liable. The court instructed the jury that, if it found that the appellant Bean either participated in the part of the work that created the hazard or exercised supervision, control or management of such work, he would be responsible. Since no exception was taken to this instruction, we do not examine its propriety.

A number of witnesses testified that Bean supervised the employees of the Overland Construction Company, which owned the clamshell which was hired for the actual digging, and that he used his bulldozer for part of the opera-

tion. Bean denied these facts. The testimony being thus in conflict and there being substantial evidence that Bean did participate in and supervise the operation, we see no reason to disturb the verdict.

The judgment is affirmed.

HAMLEY, C. J., DONWORTH, HILL, and WEAVER, JJ., concur.

